**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

SUBHASH PATEL, Individually and On Behalf of All Others Similarly Situated,

    *Plaintiff*,

    v.

KONINKLIJKE PHILIPS N.V., FRANS VAN HOUTEN, and ABHIJIT BHATTACHARYA,

    *Defendants*.

21-CV-4606 (MKB) (MMH)

(Oral Argument Requested)

**DEFENDANTS' REPLY MEMORANDUM IN FURTHER SUPPORT**
**OF THEIR MOTION TO DISMISS THE AMENDED COMPLAINT**

Sharon L. Nelles
William B. Monahan
Elizabeth N. Olsen
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
(212) 558-4000

*Counsel for Defendants*

May 18, 2022

**TABLE OF CONTENTS**

*Page*

**PRELIMINARY STATEMENT** ............................................................................................ 1

**ARGUMENT** ..................................................................................................................... 2

I.  THE OPPOSITION CONFIRMS THAT THE COMPLAINT DOES NOT ALLEGE A STRONG INFERENCE OF SCIENTER AS TO ANY DEFENDANT ........................................................................................................ 2

    A.  Plaintiffs' New "Motive" Theory—Nowhere Pled in the Complaint—Is Not Plausible, Reasonable or at Least as Compelling as the Opposing Inference of Nonfraudulent Intent ........................................................... 2

    B.  Plaintiffs Confirm in Their Opposition That They Have No Particularized Allegations of Scienter for Anyone Responsible for the Challenged Statements ......................................................................................... 4

II.  THE OPPOSITION DOES NOT IDENTIFY A STATEMENT BY DEFENDANTS THAT WAS BOTH FALSE WHEN MADE AND "SUFFICIENTLY SPECIFIC" TO "GUARANTEE SOME CONCRETE FACT OR OUTCOME" TO INVESTORS ................................................................. 7

III.  PLAINTIFFS' OPPOSITION CONFIRMS THAT THEY CANNOT PURSUE CLAIMS BASED ON POST-PURCHASE MISSTATEMENTS OR ON BEHALF OF INDIVIDUALS WHO DID NOT PURCHASE THE STOCK ON THE NYSE ................................................................................................... 10

**CONCLUSION** ................................................................................................................. 10

## TABLE OF AUTHORITIES

*Page(s)*

### CASES

*In re Allergan PLC Sec. Litig.*,
    2019 WL 4686445 (S.D.N.Y. Sept. 20, 2019) ............................................................ 9

*ATSI Commc'ns, Inc.* v. *Shaar Fund*,
    493 F.3d 87 (2d Cir. 2007) ............................................................................................ 4

*In re Bayou Fund Litig.*,
    534 F. Supp. 2d 405 (S.D.N.Y. 2007) ................................................................. 4, 9-10

*Citiline Holdings* v. *iStar Fin.*,
    701 F. Supp. 2d 506 (S.D.N.Y. 2010) ......................................................................... 5

*In re Henry Schein*,
    2019 WL 8638851 (E.D.N.Y. Sept. 27, 2019) ........................................................... 4

*Jackson* v. *Abernathy*,
    960 F.3d 94 (2d Cir. 2020) ...................................................................................... 2, 6

*Levy* v. *Maggiore*,
    48 F. Supp. 3d 428 (E.D.N.Y. 2014) ........................................................................ 10

*Manavazian* v. *Atec Grp.*,
    160 F. Supp. 2d 468 (E.D.N.Y. 2001) ........................................................................ 9

*Menora* v. *Int'l Flavors*,
    2021 WL 1199035 (S.D.N.Y. Mar. 30, 2021) ........................................................... 7

*Miss. Public Emps.' Ret. Sys.* v. *Bos. Sci.*,
    523 F.3d 75 (1st Cir. 2008) ..................................................................................... 2-3

*Novak* v. *Kasaks*,
    216 F.3d 300 (2d Cir. 2000) ..................................................................................... 2, 4

*Okla. Police Pension Fund* v. *Teligent*,
    2020 WL 3268531 (S.D.N.Y. June 17, 2020) ............................................................ 8

*In re OSI Pharms., Inc. Sec. Litig.*,
    2007 WL 9672541 (E.D.N.Y. Mar. 31, 2007) ........................................................... 9

*Pub. Pension Fund* v. *KV Pharm.*,
    679 F.3d 972 (8th Cir. 2012) ...................................................................................... 8

*In re PXRE Grp.*,
   600 F. Supp. 2d 510 (S.D.N.Y. 2009) ........................................................................ 3

*Rex & Roberta Ling Living Tr.* v. *B Commc'ns*,
   346 F. Supp. 3d 389 (S.D.N.Y. 2018) ..................................................................... 6-7

*Richman* v. *Goldman Sachs*,
   868 F. Supp. 2d 261 (S.D.N.Y. 2012) ....................................................................... 7

*Robbins* v. *Moore Med.*,
   788 F. Supp. 179 (S.D.N.Y. 1992) ........................................................................... 10

*S. Cherry St.* v. *Hennessee Grp.*,
   573 F.3d 98 (2d Cir. 2009) ........................................................................................ 4

*In re Salix Pharms.*,
   2016 WL 1629341 (S.D.N.Y. Apr. 22, 2016) ........................................................... 5

*In re Sanofi Sec. Litig.*,
   87 F. Supp. 3d 510 (S.D.N.Y. 2015) ......................................................................... 8

*Schaffer* v. *Horizon Pharma*,
   2018 WL 481883 (S.D.N.Y. Jan. 18, 2018) .............................................................. 4

*Schaeffer* v. *Nabriva Therapeutics*,
   2020 WL 7701463 (S.D.N.Y. Apr. 28, 2020) ........................................................... 8

*Shields* v. *Citytrust*,
   25 F.3d 1124 (2d Cir. 1994) .................................................................................. 2, 3

*Silvercreek Mgmt.* v. *Citigroup*,
   248 F. Supp. 3d 428 (S.D.N.Y. Mar. 31, 2017) ....................................................... 7

*Teamsters* v. *Dynex*,
   531 F.3d 190 (2d Cir. 2008) ...................................................................................... 6

*U.S. Educ. Loan Trust* v. *RBC*,
   2011 WL 6778480 (S.D.N.Y Dec. 21, 2011) ............................................................ 3

## PRELIMINARY STATEMENT

Plaintiffs' Opposition confirms the fatal flaws in Plaintiffs' efforts to manufacture securities fraud claims against the Dutch parent company, KPNV, and two of its most senior executives.  This action is based on a voluntary recall of devices used to treat respiratory conditions undertaken *not* by KPNV, but by non-party Philips RS, one of KPNV's nearly 300 subsidiaries worldwide (and one of 70 subsidiaries in the United States).  And while Plaintiffs focus on allegations regarding health risks associated with the sound abatement foam used in the devices, this is not a consumer fraud case; it is a *securities* fraud case.  Indeed, the consumer claims relating to the recall have been consolidated in a multidistrict litigation in Pennsylvania.  Here, however, Plaintiffs are required under the PSLRA and Rule 9(b) to plead:  (1) particularized factual allegations establishing a "strong inference" that someone *responsible for the challenged statements* knew they were false when made or deliberately and consciously disregarded contrary facts; and (2) a misrepresentation by Defendants that was sufficiently specific for an investor to reasonably rely on that statement as a *guarantee of some concrete fact or outcome*.  (*See* Mot. at 9.)  Plaintiffs have failed in both respects.

Plaintiffs identify only two individuals—KPNV's CEO and CFO—who allegedly had *any* involvement in the challenged statements at all.  But Plaintiffs offer no particularized allegations showing that either of them had any contrary knowledge at the time of the statements.  In an effort to avoid this dispositive point, Plaintiffs pivot to the observations made by the FDA about *non-party Philips RS* and its Business Leader for Sleep and Respiratory Care.  But an affiliate's alleged knowledge cannot be imputed to the parent (Mot. at 12-14), and even if it could, the Complaint is devoid of any particularized allegation that anyone *at Philips RS* had any involvement in the challenged statements made by *KPNV*.  This failure to plead "what role those

employees [who allegedly had contrary knowledge] played in crafting or reviewing the challenged statements" is fatal to all claims. *Jackson* v. *Abernathy*, 960 F.3d 94, 99 (2d Cir. 2020).

The Opposition also underscores Plaintiffs' failure to allege a single material misrepresentation with the requisite specificity. The challenged statements are all general statements regarding quality, compliance and safety, the historical performance of the sleep and respiratory care business, and the initial €250 million provision—and none was false or misleading when made. Securities fraud cannot be premised on "fraud by hindsight." *Shields* v. *Citytrust*, 25 F.3d 1124, 1129 (2d Cir. 1994).

## ARGUMENT

**I.    THE OPPOSITION CONFIRMS THAT THE COMPLAINT DOES NOT ALLEGE A STRONG INFERENCE OF SCIENTER AS TO ANY DEFENDANT.**

**A.    Plaintiffs' New "Motive" Theory—Nowhere Pled in the Complaint—Is Not Plausible, Reasonable or at Least as Compelling as the Opposing Inference of Nonfraudulent Intent.**

Plaintiffs do not dispute that the Individual Defendants did not engage in the paradigmatic conduct evidencing motive: suspicious stock trading. Rather, the Individual Defendants *increased* their stockholdings throughout the class period and KPNV conducted multi-billion-euro share *buybacks* during the class period—both wholly inconsistent with any theory of motive or knowledge. (Mot. at 10.) Scrambling, Plaintiffs now argue (at 23-24) that "Defendants wanted to avoid or delay a recall" and "withheld the information to allow the Company to build up its inventory of non-defective products to avoid losing market share."

This new motive theory fails for at least three reasons. *First*, it is not pled in the Complaint. *Second*, even had it been pled, it does not provide the "concrete and personal" benefit to the Individual Defendants required to plead a cognizable motive. *Novak* v. *Kasaks*, 216 F.3d 300, 307-08 (2d Cir. 2000). Unlike here, the plaintiff in *Miss. Public Emps.' Ret. Sys.* v. *Bos. Sci.*

(*see* Opp. at 24) alleged that the individual defendants withheld information to allow the company to build up inventory and avoid losing market share so that "during this lag period," they could engage in *insider trading to enrich themselves by $332 million*. 523 F.3d 75, 86-90 (1st Cir. 2008). *Third*, Plaintiffs' new theory is economically irrational, even based on the Complaint's own allegations, and therefore cannot give rise to an inference of fraudulent intent. *U.S. Educ. Loan Trust* v. *RBC*, 2011 WL 6778480, at *10 (S.D.N.Y Dec. 21, 2011).

Specifically, the Complaint alleges that Defendants decided that Philips RS should continue to sell (and even develop new) devices that they knew contained the *defective* foam while, according to the Opposition—*at this very same time*—they also caused Philips RS to "build up" its "*non-defective* device[]" inventory. (Compl. ¶¶ 76, 114, 249; Opp. at 23-24 (emphasis added).) This makes no sense. If Defendants had known of a problem with the foam, it would have been economically irrational for them to have increased the number of devices in the market *with* the defective foam, all of which would ultimately be subject to recall to be replaced with non-defective foam devices. Instead, they would have sold devices with the *non*-defective foam in the first place. Plaintiffs' "theory thus rests on the notion that [Defendants] would be willing to" cause Philips RS to continue to produce "a massive inventory of [devices requiring recall] . . . which [Defendants] *knew* would be [recalled]." *U.S. Educ. Loan Trust*, 2011 WL 6778480, at *10; *see Shields*, 25 F.3d at 1130 ("It is hard to see what benefits accrue from a short respite from an inevitable day of reckoning."). The competing inference—that the Defendants in The Netherlands, far away from the complaints allegedly received at Philips RS's manufacturing facility in Murrysville, Pennsylvania, did not know of a problem with the foam until shortly before they disclosed it in April 2021—is far "more compelling for purposes of the *Tellabs* analysis." *In re PXRE Grp.*, 600 F. Supp. 2d 510, 529 n.21 (S.D.N.Y. 2009).

**B.      Plaintiffs Confirm in Their Opposition That They Have No Particularized Allegations of Scienter for Anyone Responsible for the Challenged Statements.**

Plaintiffs incorrectly assert that "[t]he key question for scienter is whether 'defendants knew, or more importantly, should have known that they were misrepresenting material facts.'" (Opp. at 18 (quoting *Novak*, 216 F.3d at 308).)  In fact, negligence is not enough under the securities laws, and recklessness requires "facts approaching a *knowledgeable* participation in the fraud or a *deliberate and conscious disregard* of facts."  *In re Bayou Fund Litig.*, 534 F. Supp. 2d 405, 415 (S.D.N.Y. 2007) (emphasis added); *see ATSI Commc'ns, Inc.* v. *Shaar Fund*, 493 F.3d 87, 99 (2d Cir. 2007) (pleading requirement is "strong circumstantial evidence of conscious misbehavior or recklessness"); *S. Cherry St.* v. *Hennessee Grp.*, 573 F.3d 98, 109 (2d Cir. 2009) ("conscious recklessness" is "a state of mind approximating *actual intent*").[1]

To try to meet their burden, Plaintiffs speculate that "[c]omplaint handling and post market surveillance" was a topic of unspecified meetings of KPNV's Quality & Regulatory Committee ("KPNV QRC") attended by Mr. van Houten.  (Opp. at 20; Compl. ¶¶ 105, 423.)[2]  But Plaintiffs do not allege that those KPNV-level meetings addressed "[c]omplaint handling and post market surveillance" *about degrading foam in the devices sold by Philips RS.*  Plaintiffs' bare allegation hardly pleads "what was said in the meetings, who said what, and whether [Mr. van Houten] heard what was said."  *In re Henry Schein*, 2019 WL 8638851, at *18 (E.D.N.Y. Sept. 27, 2019); s*ee Schaffer* v. *Horizon Pharma*, 2018 WL 481883, at *12 (S.D.N.Y. Jan. 18, 2018)

---

[1] In *Novak*, which Plaintiffs quote, the Second Circuit stated that "defendants knew or, more importantly, should have known that they were misrepresenting material facts" only because the complaint "specifically allege[d] *defendants' knowledge* of facts or access to information contradicting their public statements."  216 F.3d at 308 (emphasis added).

[2] Plaintiffs do not dispute in their Opposition that Mr. Bhattacharya did not attend any of the KPNV QRC meetings.

(allegations that defendants were "present" at meetings insufficient with "no details" of "what was actually said").[3]

Plaintiffs attempt to fill this pleading gap by misdirection, focusing on Mr. van Houten's statement in April 2021, made after KPNV announced its initial €250 million provision, that "[t]he issue with the DreamStation 1 family and related products c[a]me out of post-market surveillance." (Opp. at 20; Compl. ¶ 299.)  But this "post-market surveillance" had nothing to do with KPNV or the KPNV QRC meetings, and Mr. van Houten did not say otherwise.  As the FDA's Form 483 report (on which Plaintiffs rely extensively) expressly states, the "post-market surveillance" was at *Philips RS*, not KPNV.  (*See, e.g.,* Mot. Ex. 16 at 3, 12-13.)  Nor do Plaintiffs plead that Mr. van Houten learned of the complaints identified through Philips RS's post-market surveillance prior to any of his challenged statements.  The fact that he was aware of the post-market surveillance *in April 2021* does not plead earlier knowledge.

Plaintiffs also rely on the FDA's statement in its Form 483 report that "your Sleep and Respiratory Care Business Leader" attended "management review meetings" where "the foam degradation issues were discussed."  (Opp. at 21-22; Mot. Ex. 16 at 24.)  Entirely on that basis, Plaintiffs claim to have found an (unspecified) person whose scienter can somehow be imputed to KPNV.  (Opp. at 22.)  This argument fails for three reasons.  To begin, the Complaint mentions "the Business Leader for Sleep and Respiratory Care" exactly *once* (Compl. ¶ 374), and nowhere alleges the identity of this person or that he or she was employed by or an agent of KPNV.

---

[3] Nor have Plaintiffs pled that the Individual Defendants were aware of contrary information simply because they "routinely discussed the Devices." (Opp. at 22.) Each case Plaintiffs cite was premised not on "routine discussions" but on particularized allegations of contrary knowledge. *See Citiline Holdings* v. *iStar Fin.*, 701 F. Supp. 2d 506, 516 (S.D.N.Y. 2010) (defendants "monitored the value of their portfolio on a nearly real-time basis"); *In re Salix Pharms.*, 2016 WL 1629341, at *14-15 (S.D.N.Y. Apr. 22, 2016) ("[W]e have visibility in the inventories because we know what we ship, we know what pulls through, we know what returns are.").

*Second*, the portion of the FDA's report cited by Plaintiffs was issued to Philips RS, and expressly stated that "*your* Sleep and Respiratory Care Business Leader and Head of Quality" attended the referenced meetings.  (Mot. Ex. 16 at 24 (emphasis added).)  Plaintiffs do not dispute that the references to "your" or "your firm" throughout the report referred to *Philips RS*, not KPNV.  (Mot. at 12.)[4]  The Complaint itself acknowledges that Sleep and Respiratory Care positions are at *Philips RS*.  (*See, e.g.,* Compl. at 107 n.7 (identifying the Sleep and Respiratory Care Head of Quality as a position at "Philips Respironics").)[5]

*Finally*, even if the Court accepted Plaintiffs' legally flawed and conclusory assertion that "the Business Leader for Sleep and Respiratory Care is an agent of [KPNV] for imputation purposes," Plaintiffs still do not allege the required connection between this individual *and the preparation or dissemination of the challenged statements*.  In this Circuit, plaintiffs must plead facts creating a "strong inference" that "someone whose scienter is imputable to the corporate defendants *and who was responsible for the statements made* was at least reckless toward the alleged falsity of those statements."  *Teamsters* v. *Dynex*, 531 F.3d 190, 197 (2d Cir. 2008); *see Jackson*, 960 F.3d at 99 (allegations did not provide the "connective tissue between those employees [who had contrary information] and the alleged misstatements" by explaining "what role those employees played in crafting or reviewing the challenged statements"); *accord*

---

[4] Every page of the FDA's report states that the "firm" was "Philips Respironics, Inc."  (Mot. Ex. 16.)  Plaintiffs concede (Opp. at 2-3) that the FDA's report resulted from "its site investigation of Philips Respironics," and the FDA found in its report that "Philips Respironics" became "aware of this issue and related field complaints in at least 2015 or earlier."

[5] Plaintiffs claim (for the first time in their Opposition (at 22 n.13)) that they "believe" the "Sleep and Respiratory Care Business Leader" was John Frank.  Whether correct or not, that cannot help Plaintiffs as *Philips RS*, not KPNV, employed Mr. Frank.  (*See* https://www.usa.philips.com/ healthcare/articles/sleep-apnea-compliance (Mr. Frank was "SVP and General Manager *Philips Respironics* Sleep and Respiratory Care").)  Even more fundamentally, Plaintiffs do not allege the Business Leader (Mr. Frank or otherwise) had *any* involvement in the challenged statements.

*Rex & Roberta Ling* v. *B Commc'ns*, 346 F. Supp. 3d 389, 409 (S.D.N.Y. 2018); *Silvercreek Mgmt.* v. *Citigroup*, 248 F. Supp. 3d 428, 441 (S.D.N.Y. 2017).  "It is thus not clear in the first instance that [the Business Leader] was even an employee of [KPNV]," but "even if [he or she] were an employee, nowhere in the [] Complaint do [P]laintiffs substantively explain what role he [or she] had at [KPNV] or connect that role to the challenged statement[s]." *Menora* v. *Int'l Flavors*, 2021 WL 1199035, at \*27-29 (S.D.N.Y. Mar. 30, 2021).[6]

## II.    THE OPPOSITION DOES NOT IDENTIFY A STATEMENT BY DEFENDANTS THAT WAS BOTH FALSE WHEN MADE AND "SUFFICIENTLY SPECIFIC" TO "GUARANTEE SOME CONCRETE FACT OR OUTCOME" TO INVESTORS.

*KPNV's Quality Systems*:  Defendants never said that KPNV was "complying with all FDA regulations." (Opp. at 2; Mot. at 18.)  Rather, Defendants stated that KPNV "maintains Quality Systems globally that establish standards for its product design, manufacturing and distribution processes" and that "these standards are in compliance with [FDA]/[ISO] requirements."  (Compl. ¶ 80; Mot. at 18)  Plaintiffs cannot plead falsity based solely on a voluntary recall conducted by one of its 300 affiliates.  If that were the case, any products company that made a statement about its controls or standards would face a securities fraud suit upon the announcement of any recall.

Plaintiffs argue (at 15) that the FDA's Form 483 report shows the inadequacy of KPNV's Quality Systems.  But again that report only concerned Philips RS, not KPNV, and does not demonstrate any inadequacy in those Quality Systems, let alone that they did not comply with

---

[6] The cases Plaintiffs cite (at 19-20) involved allegations that the relevant individual (usually, an individual defendant) made or was responsible for the challenged statement, or plaintiffs asserted state law fraud claims (inapplicable here) or "scheme liability" claims (which Plaintiffs have abandoned).  Underscoring this point, the court in one of Plaintiffs' cases confirmed that "the law imputes [to the company] the state of mind" only "of the employees or agents who made the statement(s)." *Richman* v. *Goldman Sachs*, 868 F. Supp. 2d 261, 281 n.10 (S.D.N.Y. 2012).

applicable law.  The general statement is textbook puffery in any event, which Plaintiffs do not even try to rebut in their Opposition.  (Mot. at 3, 19-20.)  And Plaintiffs also do not dispute that the FDA's observations were not final determinations of non-compliance.  (*Id*. at 8, 12.)[7]

*Historical Performance*:  Plaintiffs do not dispute the accuracy of Defendants' statements about the historical financial performance of the sleep and respiratory care business.  (Mot. at 20.)  Instead, Plaintiffs claim (at 11-13) that Defendants *also* needed to then disclose any adverse events relating to the safety of Philips RS's devices, plus speculate about the hypothetical future decline in the business's performance.  Plaintiffs say (at 10) that Defendants had a duty to disclose because they "portrayed the Devices" as "innovative products that improved patient outcomes, have been well-received, and were safe."

But Defendants' statements concerned the "innovation," "quality" and "patient outcomes" relating to the sleep and respiratory care products *generally*, not these specific Philips RS devices.  (Compl. ¶¶ 125-128, 141.)  These generalized statements concerning an array of products cannot have created a duty to disclose every fact about each device in the portfolio of referenced products.  *See In re Sanofi Sec. Litig.*, 87 F. Supp. 3d 510, 547 (S.D.N.Y. 2015) ("Defendants [are] not obliged to reproduce a comprehensive enumeration of adverse [effects] every time they mentioned [drug's] safety profile.").[8]  Nor are the statements somehow actionable

---

[7] In each case Plaintiffs cite, the basis for the claim of securities fraud was that defendant "fail[ed] to disclose the Form 483," which the FDA had sent to defendant *prior to* the challenged statements. *Schaeffer* v. *Nabriva Therapeutics*, 2020 WL 7701463, at *9 (S.D.N.Y. Apr. 28, 2020); *Okla. Police Pension Fund* v. *Teligent*, 2020 WL 3268531, at *14 (S.D.N.Y. June 17, 2020); *Pub. Pension Fund* v. *KV Pharm.*, 679 F.3d 972, 982-83 (8th Cir. 2012).  Here, by contrast, the FDA issued its Form 483 report to Philips RS on November 9, 2021—more than a month *after* the last alleged misstatement (Compl. ¶¶ 124, 302)—and Philips RS disclosed the report three days later.

[8] The few statements Plaintiffs identify that reference any of the recalled devices did *not* state that they were "innovative products that improved patient outcomes," "well received" or "safe."  (*See, e.g.*, Compl. ¶ 157 ("DreamStation Go is the latest addition to [our] sleep apnea products focused

-8-

based on Defendants' alleged failure to disclose that degrading foam "posed a significant health risk to patients' health." (Opp. at 11.) Even if Plaintiffs had alleged facts showing awareness of the degrading foam, they still have no allegations that anyone knew it presented a "significant health risk," so there could not have been any duty to disclose. (Mot. at 20-22.) Notably, even the FDA's report about complaints received by Philips RS did *not* identify a single complaint that the degrading foam had caused *a health effect*.

   *April 2021 Initial Provision:* Plaintiffs argue (at 17) that Defendants misleadingly disclosed in April 2021 "that *only the DreamStation devices were at issue* when, in reality, myriad Devices were defective," and thus "Defendants knew or were reckless in not knowing that such a reserve would be inadequate." Again, Defendants simply never said that. KPNV's press release disclosed that the "***[t]he majority of the affected devices*** are in the first-generation DreamStation product family." (Compl. ¶¶ 10, 299 (emphasis added).) The Complaint is also devoid of any facts from which to infer that anyone at KPNV actually knew or "deliberate[ly] and conscious[ly] disregard[ed]" facts showing that the initial provision would be inadequate when made. *In re*

---

on connecting and supporting the patient, clinician, and homecare provider to enhance patient care and quality of life.").) Even Plaintiffs' cited cases (at 11-13) make clear that such statements are quintessential puffery. *See In re Allergan PLC Sec. Litig.*, 2019 WL 4686445, at *13, *22 (S.D.N.Y. Sept. 20, 2019) (statements about "the quality and safety of [defendants'] breast implant products," such as that defendants are "number one in breast implants" and possess a "very strong product line"). Plaintiffs' other cases do not help them. *See In re OSI Pharms., Inc. Sec. Litig.*, 2007 WL 9672541, at *8 (E.D.N.Y. Mar. 31, 2007) (statements described specific study results for a particular product that conveyed only the study's positive findings, not its negative ones); *Manavazian* v. *Atec Grp.*, 160 F. Supp. 2d 468, 480-81 (E.D.N.Y. 2001) (business had already "crumbl[ed]" at the time the company stated it was "position[ed] for dramatic revenue and earnings growth in the future"). With respect to Defendants' alleged misrepresentations regarding the E30 ventilator, Plaintiffs concede that the FDA *waived* current good manufacturing practice requirements, including quality system requirements, pursuant to an Emergency Use Authorization. (Mot. at 20 n.7.) Plaintiffs respond (at 12 n.5) that "Defendants failed to inform the FDA" that the allegedly defective foam had been included in those devices. Even if true, Plaintiffs are not the FDA and may not bring claims on its behalf.

*Bayou*, 534 F. Supp. 2d at 415.  In fact, KPNV expressly warned investors at the time it took the provision that "the amount of the provision may change at a future date."  (Mot. at 23.)[9]

### III.   PLAINTIFFS' OPPOSITION CONFIRMS THAT THEY CANNOT PURSUE CLAIMS BASED ON POST-PURCHASE MISSTATEMENTS OR ON BEHALF OF INDIVIDUALS WHO DID NOT PURCHASE THE STOCK ON THE NYSE.

To attempt to respond to Defendants' case law holding that a plaintiff lacks standing to bring claims concerning statements made *after* the plaintiff's last stock purchase, Plaintiffs rely *only* on "scheme liability" cases.  (Opp. at 25.)  But "class representatives are entitled to assert § 10(b) claims arising from statements made both before and after the purchase date *if the statements allegedly were made in the furtherance of a common scheme to defraud*."  *Robbins* v. *Moore Med.*, 788 F. Supp. 179, 187 (S.D.N.Y. 1992) (emphasis added).  Here, "Plaintiff[s] d[id] not respond" to Defendants' showing that Plaintiffs had not adequately pled scheme liability (Mot. at 17), and have therefore abandoned that theory.  *Levy* v. *Maggiore*, 48 F. Supp. 3d 428, 452 (E.D.N.Y. 2014).  Plaintiffs therefore cannot bring claims based on post-purchase statements.  Nor do Plaintiffs dispute (*see* Opp. at 25) that they may only bring "*Morrison*-compliant purchases."  Thus, any claims on behalf of non-NYSE stock purchasers must be dismissed.  (Mot. at 25.)

### CONCLUSION

This Court should dismiss the Amended Complaint in its entirety with prejudice.[10]

---

[9] KPNV did not fail to disclose the "risk" when it announced the €250 million provision, as Plaintiffs claim.  (Opp. at 18.)  Even setting aside the fact of *the provision itself*, KPNV also then disclosed "that the foam may degrade," that the "actual amount of the costs . . . depende[d] on a number of factors the outcome of which is uncertain," and that the provision "may change at a future date," including as Philips RS was "in the process of engaging with the relevant regulatory agencies . . . and initiating appropriate actions to mitigate these possible risks."  (Mot. Ex. 9.)

[10] Plaintiffs request leave to *further* amend their Complaint, but their only proposed amendment is to specifically identify the "Sleep and Respiratory Care Business Leader" as John Frank.  (Opp. at 22 n.13.)  As explained *supra* at Section I.B, such an amendment would be futile.  Leave to amend should therefore be denied.

Dated: New York, New York
        May 18, 2022

Respectfully submitted,


/s/ *Sharon L. Nelles*

Sharon L. Nelles
William B. Monahan
Elizabeth N. Olsen
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
(212) 558-4000

*Counsel for Defendants*

-11-