

**Emma Gilmore**
Partner

November 9, 2022

**BY ECF**
The Honorable Margo K. Brodie
Chief District Judge
United States District Court for the Eastern District of New York
225 Cadman Plaza East, Courtroom 6F
New York, NY 11201

Re: *Patel* **v.** *Koninklijke Philips N.V. et al.*, **Case No. 1:21-cv-04606-MKB (E.D.N.Y.)**

Dear Judge Brodie:

We represent Lead Plaintiff Richard Sun and Plaintiff Subhash Patel ("Plaintiffs") in the above-referenced action. Pursuant to Rule 3.A of the Court's Individual Practices and Rules, Plaintiffs respectfully request a pre-motion conference to file a motion for leave to amend their complaint (Dkt. No. 16) under Fed. R. Civ. P. 15(a). A redline of the Proposed Second Amended Complaint ("PSAC") is attached as Exhibit A. This is Plaintiffs' first request to amend the Complaint, which Plaintiffs make expeditiously and before the Court rules on Defendants' motion to dismiss (Dkt. No. 28).[1]

Leave to file an amended complaint should be freely given "when justice so requires." Fed. R. Civ. P. 15(a). Leave to amend is particularly appropriate in securities fraud lawsuits such as this one, which are subject to the heightened pleading requirements imposed by the Private Securities Litigation Reform Act of 1995. *See In re Take-Two Interactive Sec. Litig.*, 551 F. Supp. 2d 247, 312 (S.D.N.Y. 2008).

The operative complaint ("Complaint"), (Dkt. No. 16), alleges that throughout the Class Period, Defendants repeatedly portrayed their flagship Ventilators, BiPAP Machines, and CPAP Machines as innovative products that improved patient outcomes, were well-received, and were safe. For example, Defendants claimed that the "DreamStation Go delivers . . . clinically-proven performance and comfort, for reliable, convenient therapy on-the-go," a product that "enhance[s] patient care and quality of life." Complaint ¶157. Likewise, Defendants characterized the Trilogy ventilator as "clinically-validated" and "expected to ... reduce hospital admissions while improving the patient experience." *Id.* ¶171. They touted the E30 ventilator as "an adaptation from a bi-plan

---

[1] Before submitting this letter, on October 25, 2022, Plaintiffs reached out to Defendants to determine whether they would oppose Plaintiffs' request for leave to amend the Complaint. While Plaintiffs explained to Defendants the nature of the allegations they plan to include in the PSAC, Defendants informed Plaintiffs that they will not provide their position until they receive a copy of the PSAC.

ventilator, to which we have changed the software, added sensors, added filters, so that it is safe and suitable for critical care," and represented that the E30 ventilator was developed "while also complying to medical device quality standards." *Id*. ¶¶78, 255.

These and other similar statements were false and misleading at the time they were made because they failed to disclose that the foam used in these devices was subject to degradation, and posed a significant risk to patients' health. Once Defendants chose to tout the characteristics of the devices, they were duty-bound to tell investors the whole truth. *See Meyer v. Jinkosolar Holdings Co.*, 761 F.3d 245, 250 (2d Cir. 2014).

While Plaintiffs believe that the allegations in the Complaint are more than sufficient to plead violations of the federal securities laws against Defendants, since the Complaint was filed additional factual developments occurred that support and enhance Plaintiffs' claims. For example, Defendant Koninklijke Philips N.V. disclosed that "o[n] April 8, 2022, Philips Respironics and certain of Philips' subsidiaries in the US received a [criminal] subpoena from the US Department of Justice to provide information related to events leading to the Respironics recall."[2] In an earnings call with analysts that same day, Philips' Chief Executive Officer, Defendant Frans van Houten, stated that "[the Department of Justice] are preparing a [criminal] investigation . . . ."

The Respironics recall goes to the heart of Plaintiffs' claims, and the criminal investigation into the events leading to the recall corroborates the strength of Plaintiffs' claims. *See*, *e.g.*, *In re Gentiva Sec. Litig.*, 932 F. Supp. 2d 352, 380 (E.D.N.Y. 2013) (agreeing that governmental investigations can be considered as another piece of the puzzle when analyzing scienter); *In re Bristol Myers Squibb Co. Sec. Litig.*, 586 F.Supp.2d 148, 168 (S.D.N.Y.2008) (same); *Willis v. Big Lots, Inc.*, 2016 WL 8199124, at *34 (S.D. Ohio Jan. 21, 2016) (criminal or civil investigations commenced after the class period can support an inference of scienter "if these investigations are, in fact, into occurrences during the class period and address the allegedly fraudulent behavior…").

The PSAC cements an inference of scienter in additional ways. To plead corporate scienter "the pleaded facts must create a strong inference that someone whose intent could be imputed to the corporation acted with the requisite scienter." *Teamsters Local 445 Freight Div. Pension Fund v. Dynex Cap. Inc.*, 531 F.3d 190, 195 (2d Cir. 2008); *accord*, *Loreley Fin. (Jersey) No. 3 v. Wells Fargo*, 797 F.3d 160, 177 (2d Cir. 2015).[3] The PSAC clarifies, among other things, that John Frank was the Chief Executive Officer and Business Leader for Sleep and Respiratory Care, the key individual that attended all the management review meetings since 2019, where the foam degradation issues were discussed. Frank held a dual role at Philips and at Philips Respironics. Frank's own LinkedIn profile distinguishes between his position at Philips Respironics, Respiratory Care Group between 2004 to 2008 and his position at Philips Amsterdam between 2008 to 2020, making it clear that he also fulfilled a critical role at the parent company. *See* https://www.linkedin.com/in/john-frank-8017404/ (last visited October 7, 2022).

The PSAC also adds that a confidential witness, a former employee at Philips with knowledge of Frank's role at the Company, stated that Frank was on the executive committee, was

---

[2] Plaintiffs informed the Court in a July 21, 2022 letter of these developments.  Dkt. No. 34.

[3] *See* Plaintiffs' Opposition to Defendants' Motion to Dismiss.  (Dkt No. 30) at 19-20.

the key person at Sleep and Respiratory Care dealing with Defendant van Houten, and frequently traveled to the Netherlands for in-person meetings with van Houten. According to this witness, van Houten himself also visited the U.S. frequently, meeting with the biggest divisions.  Philips' Sleep and Respiratory Care Business was a bonanza for the Company. It comprised over 21% of Philips' total income from sales in the Personal Health segment, and later, when the Sleep and Respiratory Care Business moved under the Connected Care segment, it comprised over 47% of Philips' total income from sales in that segment. *See*, PSAC ¶¶ 112, 114, 128, 135, and 143. Income from the Personal Health Segment represented over 29% of the Company-wide income from sales, and income from the Connected Care segment represented over 24% of the Company-wide income from sales. *Id*.

Moreover, and equally important, additional loss causation allegations based on events that transpired after the Complaint was filed increase significantly the damages suffered by the defrauded investors. The PSAC adds 10 corrective disclosures and materializations of risks, starting with additional Class I recalls (the most serious level recall) of Philips' Evo ventilators and calls by U.S. senators "to call Philips accountable," followed by drops in the price of Philips' securities. An announcement that the Department of Justice provided a proposed consent decree to Philips caused an additional 7% plunge in the price of Philips' securities,[4] and a change in Philips' leadership, with Defendant van Houten stepping down as the Company's CEO further cratered the stock.  On October 12, 2022, Philips' stock price again went into a tailspin, suffering an 11.7% drop when the company announced that it "expects to record a 1.3 billion euro [$1.26 billion] non-cash charge in the third quarter for the impairment of goodwill of its sleep and respiratory care business," the segment impacted by the faulty devices.

In light of these developments, Plaintiffs respectfully request a pre-motion conference to discuss their anticipated motion to amend. We thank the Court for its attention to this matter.

Respectfully,

*/s/ Emma Gilmore*
Jeremy A. Lieberman
Emma Gilmore
Dolgora Dorzhieva
Villi Shteyn
POMERANTZ LLP
600 Third Avenue
New York, New York 10016
Telephone: (212) 661-1100
jalieberman@pomlaw.com
egilmore@pomlaw.com
ddorzhieva@pomlaw.com
vshteyn@pomlaw.com

---

[4] The consent decree, when considered with other allegations, strengthens the inference of scienter. *See Oklahoma Police Pension & Ret. Sys. v. LifeLock, Inc.*, 780 F. App'x 480, 485 (9th Cir. 2019); *In re Enron Corp. Sec., Deriv. & ERISA Litig.*, 235 F. Supp. 2d 549, 706 (S.D. Tex. 2002).

*Lead Counsel for Plaintiffs and the Proposed Class*

4