**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

SUBHASH PATEL, Individually and On Behalf of
All Others Similarly Situated,

               *Plaintiff*,

      v.

KONINKLIJKE PHILIPS N.V. and FRANS
VAN HOUTEN,

               *Defendants*.

21-cv-4606 (ERK) (MMH)

(Oral Argument Requested)

# DEFENDANTS' MEMORANDUM IN SUPPORT OF
# THEIR MOTION FOR RECONSIDERATION

Sharon L. Nelles
William B. Monahan
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
(212) 558-4000

*Counsel for Koninklijke Philips N.V. and*
*Frans van Houten*

October 7, 2024

## PRELIMINARY STATEMENT

Defendants Koninklijke Philips N.V. ("KPNV") and François "Frans" van Houten seek reconsideration of a single ruling from the Court's September 23, 2024 Memorandum and Order: that plaintiffs' Second Amended Complaint ("SAC") adequately pled a strong inference of scienter as to Mr. van Houten. The Court's discussion of this issue is at pages 16 to 17 of its decision. Defendants are not re-litigating any arguments already addressed by the Court. Instead, defendants seek to draw the Court's attention to (i) certain factual matters overlooked by the Court in its scienter analysis specifically as to Mr. van Houten, and (ii) the critical second step of the scienter analysis required by the U.S. Supreme Court's *Tellabs* decision, which the Court did not address in its discussion of Mr. van Houten's scienter. *See Akerman* v. *Arotech Corp.*, 608 F. Supp. 2d 372, 386 (E.D.N.Y. 2009) (noting "the critical importance of the scienter requirement at the 12(b)(6) stage"); *see also Tellabs* v. *Makor*, 551 U.S. 308, 324 (2007) ("A complaint will survive, we hold, only if a reasonable person would deem the inference of scienter cogent and *at least as compelling as any opposing inference one could draw from the facts alleged*." (emphasis added)).

Defendants do not seek reconsideration lightly, but the implications of this particular ruling are profound for them: the Court's conclusion as to Mr. van Houten was the sole basis for its ruling as to KPNV's scienter, and thus reconsideration on this one issue would result in dismissal of all remaining claims against all remaining defendants. *See Hunt* v. *Con Edison*, 2018 WL 3093970, at *2 (E.D.N.Y. 2018) (reconsideration proper to address arguments that "might reasonably be expected to alter the conclusion reached by the court").

## BACKGROUND

In its September 23 decision, the Court concluded that plaintiffs had failed to plead that Mr. van Houten had any motive to commit securities fraud. In fact, the Court highlighted several facts entirely inconsistent with scienter, including that Mr. van Houten "generally increased [his KPNV] stockholdings throughout the class period," as well as KPNV's repurchases of stock during the class period. (Order at 14.) The Court found, however, that plaintiffs had successfully pled "strong circumstantial evidence of [] conscious misbehavior or recklessness" by Mr. van Houten dating back to 2018. (*Id*. at 14, 16-17.) The Court therefore held that the SAC pled an inference of both his and KPNV's scienter. (*Id*. at 16-17, 22.)

The Court's ruling is based entirely on two factual allegations in the SAC: First, during an earnings call on April 26, 2021—the same day KPNV disclosed the foam degradation issue to the market—Mr. van Houten informed investors that "[t]he issue with the DreamStation 1 family and related products come out of our post-market surveillance, where we have picked up reports from users that lead us to do this warning" (SAC ¶¶ 337, 344, 346, 348); and second, since 2018, Mr. van Houten attended meetings of the KPNV Supervisory Board's Quality and Regulatory Committee ("QRC" or "KPNV Board QRC") where the general topic of "post market surveillance" was discussed (*id*. ¶ 132 (citing KPNV's Annual Reports)).

In its decision, the Court found that "van Houten stated that *he* had learned about the problems from post-market surveillance—ostensibly, the post-market surveillance *discussed at the QRC meetings*." (Order at 16 (emphasis added).) That, however, is not what he said. Mr. van Houten did not say how or when *he personally* learned of the foam issue. Nor did he say that the "post-market surveillance" that uncovered the issue occurred at the parent KPNV level, as opposed to the subsidiary Philips Respironics level. Nor did he say how or when the issue was

escalated by the Philips Respironics subsidiary either to the KPNV Board QRC or to him personally. None of that was pled at all.[1]

From these two allegations, the Court held that it was "plausible and readily inferable" that Mr. van Houten knew about the foam degradation issue through his attendance at KPNV Board QRC meetings beginning in 2018. (Order at 16-17.) In addition to the pleading deficiency discussed above, that holding also overlooked the FDA Form 483 Report cited in the SAC, which expressly identified that it was *Philips Respironics'* "post-market surveillance"—not KPNV's—that "revealed 17 instances allegedly related to degradation of air inlet path foam." (SAC ¶ 391; Mot., Ex. 17 at 14.) The decision also did not address whether the inference of Mr. van Houten's scienter was "cogent and at least compelling as any opposing inference of nonfraudulent intent," as required by *Tellabs*. 551 U.S. at 309.[2]

## ARGUMENT

On a motion for reconsideration, the movant must identify "controlling law or factual matters put before the court on the underlying motion that the movant believes the court overlooked and that might reasonably be expected to alter the court's decision." *Montanile* v. *Nat'l Broad. Co.*, 216 F. Supp. 2d 341, 342 (S.D.N.Y. 2002); *see also* Local Rule 6.3.

---

[1]     The Court rightfully did not give any weight to Confidential Witness 1 ("CW1"), who speculated that the foam degradation issue "would have been" escalated to Mr. van Houten. (SAC ¶ 414.) Plaintiffs do not allege that CW1 ever attended a single QRC meeting. (*See id.* ¶¶ 65, 412, 414.) In fact, the *only* allegation in the entire SAC as to what occurred at any QRC meeting comes from KPNV's Annual Reports, which disclosed that the QRC discussed the general topic of "post market surveillance." (*Id.* ¶ 132 (citing KPNV's Annual Reports).) Plaintiffs did not and cannot allege that the *foam degradation issue* was escalated to the QRC until KPNV's disclosure to investors in April 2021.

[2]     Defendants raised all of these arguments in their prior briefs, as well as at oral argument. (*See* ECF No. 48-1 at 16-17 & n.10; ECF No. 48-25 at 5, 10; ECF No. 52 at 9-12.)

**I.** **The FDA's Form 483 Report Demonstrates that the "Post-Market Surveillance" Referenced by Mr. van Houten Occurred at the Philips Respironics Subsidiary Level.**

The Court's decision relies on the observation that "van Houten stated that *he* had learned about the problems from post-market surveillance—*ostensibly*, the post-market surveillance *discussed at the QRC meetings*." (Order at 16 (emphasis added).) Respectfully, that misconstrues Mr. van Houten's statements. Mr. van Houten told the market that "[t]he issue with the DreamStation 1 family and related products come out of *our* post-market surveillance, where *we* have picked up reports from users that lead us to do this warning." (Mot., Ex. 12 at 11 (emphasis added).) Plaintiffs do not contend (nor could they) that the words "our post-market surveillance" or "we" referred to the KPNV Board QRC or any surveillance the QRC had done, let alone that Mr. van Houten personally learned of the foam issue at the QRC meetings. In fact, Mr. van Houten did not state when, how or from whom *he personally* learned of the issue. And neither of plaintiffs' confidential witnesses attended a single meeting of the KPNV Board QRC, so, as the Court correctly concluded, they cannot fill plaintiffs' pleading gaps. There are simply no factual allegations in the SAC on any of these critical matters.

Even setting aside this pleading failure, the SAC cites at length a key document that explains exactly what Mr. van Houten was referencing when he stated "*our* post-market surveillance, where *we* have picked up reports from users." (Mot., Ex. 12 at 11 (emphasis added).) The FDA's Form 483 Report describes that the foam degradation issue was discovered through post-market surveillance by the *Philips Respironics* subsidiary, not KPNV or the KPNV Board QRC. (Mot., Ex. 17.) In the Report, the FDA discusses *Philips Respironics*' post-market surveillance systems, handling of user complaints, and review of relevant data. (*See, e.g.*, *id.* at 12, 14-18.) Philips Respironics was the entity responsible for the quality processes and complaint investigations related to the foam degradation issue, and the FDA observed that *Philips*

*Respironics'* "post market surveillance information revealed 17 instances allegedly related to degradation of air inlet path foam" and documented several instances of Philips Respironics investigating "field reports/complaints." (*See, e.g., id.* at 2, 4-8, 14; SAC ¶ 391.) Even more, the FDA specifically observed that *Philips Respironics* conducted "quarterly management review meetings" that discussed the "foam degradation issues." (Mot., Ex. 17 at 25.) The report goes on to identify the dates of seven specific meetings at which *Philips Respironics* management discussed the foam issue. (*Id.*)

Plaintiffs do not allege (nor could they) that Mr. van Houten attended any of these meetings. And there is not a single factual allegation in the SAC identifying how or when Philips Respironics management escalated the foam issue either to the KPNV Board QRC or to Mr. van Houten specifically. Without allegations that connect Mr. van Houten to these meetings, the scienter allegations fail. The decision, however, overlooks the Form 483 Report and the light it sheds on Mr. van Houten's statements.[3]

The Form 483 Report's specificity sharply contrasts with plaintiffs' deficient allegations. While the Form 483 Report identifies the specific content and dates of the Philips Respironics meetings, as well as the 17 specific instances in which Philips Respironics' post-market surveillance identified "[p]olyester polyurethane foam degradation issues," KPNV's Annual Reports—the one source for *all* of plaintiffs' allegations as to the KPNV Board QRC—

---

[3]    The lack of any factual allegation identifying the escalation of the foam issue is especially glaring given how far removed the Philips Respironics meetings were from the KPNV Board QRC. Under Dutch Law, KPNV is governed by a two-tier board structure, which includes the (i) Board of Management ("BoM") and (ii) an independent Supervisory Board ("SvB"). (Mot., Ex. 5, at 8-9.) The SvB is "a separate and independent corporate body," and "members of the [SvB] can be neither a member of the [BoM] nor an employee of the Company." (*Id.* at 9-10.) The KPNV Board QRC is a committee of the SvB, far removed from the management of Philips Respironics. (*Id.* at 10.)

disclosed only that the QRC discussed "post market surveillance" generally. (SAC ¶ 132.) And Mr. van Houten's actual statements during the April 26, 2021 investor call may not be revised into something he did not say. *See In re Renewable Energy Group Sec. Litig.*, 2022 WL 14206678, at *2 (2d Cir. 2022) (rejecting plaintiffs' attempt to "misconstrue[]" defendants' "press release" as "containing an admission that the Company had identified . . . [a] problem" on a certain date and instead crediting the "more plausible explanation" that the issue was discovered at a later date).

As defendants previously argued, plaintiffs' allegations are themselves insufficient, but when combined with the information from the Form 483 Report, they cannot support a strong inference of scienter as a matter of law: Allegations that a CEO "attended some . . . meetings in which" post-market surveillance was discussed generally, paired with allegations that the specific issue of foam degradation "was discussed at some . . . other meetings," are insufficient to "raise a strong inference of scienter." *In re March & Mclennan Cos., Inc. Secs. Litig.*, 501 F. Supp. 2d 452, 486 (S.D.N.Y. 2006).

## II. The Court Did Not Consider the Competing, Nonculpable Inferences and Weigh Them Against Plaintiffs' Proffered Inference of Scienter.

Even if plaintiffs had "sufficiently pleaded an inference of van Houten's scienter" (Order at 16), the Court was *still* required to then consider whether this inference was a "strong" one. *Tellabs*, 551 U.S. at 314. As the Supreme Court has explained, "[t]o qualify as 'strong' . . . an inference of scienter must be . . . cogent and *at least as compelling as any opposing inference of nonfraudulent intent*." *Id*. (emphasis added); *see also W. Virginia Inv. Mgmt. Bd*. v. *Doral Fin. Corp.*, 344 F. App'x 717, 719 (2d Cir. 2009) (courts "must take into account plausible opposing inferences"). In their opposition brief, plaintiffs did not respond to the opposing inference argued by defendants in their opening brief. (*See* Mot. at 17.) But even though plaintiffs failed to do so,

the Court still was required to perform the mandatory weighing of inferences in deciding defendants' motion. (*Id.*)

The Second Circuit's approach in *Slayton* provides a good example. There, the Second Circuit first considered whether the factual allegations in the complaint supported an inference of scienter. After determining the inference of fraudulent intent "plausible," the Court did not end its analysis. *Slayton* v. *Am. Exp. Co.*, 604 F.3d 758, 775 (2d Cir. 2010). Instead, the *en banc* panel *next* went into a detailed, multi-page analysis of the opposing nonfraudulent inferences. *Id.* at 775-77. In considering the alternative inferences, the panel highlighted that plaintiffs had "not pleaded any facts supporting a motive to deceive" and also extensively discussed the competing facts that undermined the inference urged by plaintiffs. *Id.* at 776-77. In the end, while the panel "consider[ed] this to be a close case," when it "examine[d] the record as a whole, [it] conclude[d] that the inference of fraudulent intent is not 'at least as compelling as any opposing inference one could draw from the facts alleged.'" *Id.* at 777 (quoting *Tellabs*, 551 U.S. at 324).

Here, the alternative inference is far more compelling than plaintiffs' inference— and it is also supported by common sense. As defendants previously argued (Mot. at 11, 17), if Mr. van Houten actually knew of the foam issue as early as 2018 (as plaintiffs allege), it makes no sense that he would then choose to *increase* his own stockholdings, thus increasing his own personal financial exposure. (*See* Order at 14 (no motive where "judicially noticeable SEC filings indicat[e] that van Houten [] increased [his] shareholdings throughout the Class Period"); *Teamsters Loc. 445 Freight Div. Pension Fund* v. *Dynex Cap. Inc.*, 531 F.3d 190, 197 (2d Cir. 2008) (where motive not sufficiently pled, "a number of competing inferences regarding scienter arise").) It also makes no sense that, supposedly fully aware of the issue, Mr. van Houten would

choose to do nothing about it for three years—other than increasing his own stockholdings—while Philips Respironics continued to sell devices with the same foam, creating the potential for far greater liability and exposure. *See Gillis* v. *QRX*, 197 F. Supp. 3d 557, 600 (S.D.N.Y. 2016) (scienter allegations insufficient where "as pled, the scheme . . . lacks a coherent rational objective . . . [and] by its nature . . . could not have continued in perpetuity"); *Shields* v. *Citytrust Bancorp.*, 25 F.3d 1124, 1130 (2d Cir. 1994) ("It is hard to see what benefits accrue from a short respite from an inevitable day of reckoning."). Plaintiffs also never offer a cogent explanation as to why things somehow changed for Mr. van Houten in 2021 such that he decided only then—and not in 2018, 2019 or 2020—to disclose the foam issue.

When "motive is not apparent," the strength of Plaintiffs' theory of scienter must be measured against a heightened recklessness standard, meaning that the strength of plaintiffs' allegations showing conscious misbehavior by Mr. van Houten needs to be "correspondingly greater." *In re Aceto Sec. Litig.*, 2019 WL 3606745, at *9 (E.D.N.Y. Aug. 6, 2019) (Korman, J.). Plaintiffs' allegations fall far short. The much stronger inference—and one that is fully consistent with and supported by the FDA Form 483 Report—is that (i) Philips Respironics, as the subsidiary responsible for the devices, received complaints, conducted post-market surveillance, and investigated the matter, and (ii) following its investigation, Philips Respironics reported the issue to KPNV and Mr. van Houten shortly before KPNV's April 2021 disclosure. (*See* Mot. at 17; Reply at 10.) After performing the required weighing of inferences, the scale is decidedly in favor of the nonculpable explanation. Thus, under *Tellabs*, dismissal is required *even if* plaintiffs had "sufficiently pleaded an inference of van Houten's scienter" (Order at 16).

**CONCLUSION**

Defendants respectfully request that the Court reconsider its ruling that the SAC adequately pled Mr. van Houten's (and, therefore, KPNV's) scienter and dismiss the SAC with prejudice in its entirety.

Dated: New York, New York
October 7, 2024

Respectfully submitted,

/s/ William B. Monahan

Sharon L. Nelles
William B. Monahan
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
(212) 558-4000

*Counsel for Koninklijke Philips N.V. and Frans van Houten*