**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---

SUBHASH PATEL AND RICHARD SUN,
Individually and On Behalf of All Others Similarly
Situated,

                    *Plaintiffs*,

      v.

KONINKLIJKE PHILIPS N.V. and FRANS
VAN HOUTEN,

                  *Defendants*.

1:21-cv-4606 (ERK) (MMH)

---

## STIPULATED ORDER REGARDING DISCOVERY OF DOCUMENTS AND ELECTRONICALLY STORED INFORMATION

This Order will govern the protocol for the production of Documents, both Hard-Copy Documents and Electronically Stored Information ("ESI"), in the above-captioned action (the "Litigation").

**I.** **PURPOSE**

1. This Order will help to streamline Document, including but not limited to ESI, discovery (defined below) to best carry out the requirements set forth in the Federal Rules of Civil Procedure, this Court's Local Rules, and any other applicable orders and rules.

2. The Parties shall take all reasonable steps to comply with the protocol set forth herein.

3. Except as specifically limited herein, this Order governs the production of discoverable Documents and ESI by the Parties during the Litigation.

## II. COOPERATION

1.      The Parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter consistent with the requirements set forth in the Federal Rules of Civil Procedure, this Court's Local Rules, and any other applicable orders and rules.

2.      This Order shall not enlarge or affect the proper scope of discovery in this Litigation, nor imply that discovery produced under the terms of this Order is properly discoverable, relevant, or admissible in this Litigation.  Additionally, this Order does not alter or expand the preservation obligations of the Parties.

3.      The Parties acknowledge their duty to work together cooperatively throughout the discovery process. Consistent with their obligations under applicable Federal Rules of Civil Procedure, the Parties will first attempt to resolve, in person, in writing (including e-mail), by video conference, or by telephone, disputes regarding the issues set forth herein before filing a motion with Magistrate Judge Marcia M. Henry of the U.S. District Court for the Eastern District of New York (the "Magistrate Judge"),[1] or otherwise seeking relief.  If a Producing Party cannot comply with any material aspect of this Order, such Party shall inform the Requesting Party in writing, before the time of production, as to why compliance with the Order is not possible.  No Party may seek relief from the Magistrate Judge concerning compliance or lack thereof with the Order unless it has conferred with the other Parties.  If the Parties are unable to resolve the dispute after a good faith effort, the Parties may seek intervention from the Magistrate Judge in accordance with the Magistrate Judge's procedures.

---

[1] Per the Court's Individual Motion Practices and Rules, the Parties understand that any discovery disputes will be referred to the Magistrate Judge.

4.     Nothing in this Order shall be deemed to waive or limit any Party's right to object to the production of certain documents or ESI, or to move for an appropriate Order on the grounds that the sources are not reasonably accessible because of undue burden or cost.

## III.     DEFINITIONS

1.     "**Confidentiality Designation**" means the legend affixed to Documents or provided in the "Confidentiality" metadata field pursuant to **Appendix B** below for Confidential Discovery Information as defined by, and subject to, the terms of the Parties' Protective Order (ECF No. 65), or any subsequent order, in the Litigation.

2.     "**Document**" is defined to be synonymous in meaning and equal in scope to the usage of this term in Rules 26 and 34 of the Federal Rules of Civil Procedure and includes any written, recorded, or tangible graphic matter, or any other means of preserving thought or expression, including all non-identical copies, drafts, worksheets, and proofs, whether handwritten, typed, printed, or otherwise created, specifically including telephone slips and logs, diary entries, calendars, reports, evaluations, assessments, analyses, test results, correspondence, memoranda, notes, email, text messages, instant messages (including all messages sent, received and produced by applications like Skype, Microsoft Teams, Google Chat, WhatsApp, Zoom or any proprietary instant messaging system), chat logs (including all chat logs sent, received and produced by applications like Skype, Google Chat, or Zoom), videotapes, video cartridges, audio tapes, electronically stored information of any kind including databases, drawings, graphics, charts, photographs, computer diskettes and disks, facsimile transmissions, and any other data compilation from which information can be obtained and translated through detection devices into reasonably usable form.   The term "Document" shall include Hard-Copy Documents, Electronic Documents, and ESI as defined herein.

3.  "**Electronic Document or Data**" means Documents or data existing in electronic form including but not limited to: e-mail or other means of electronic communications, word processing files (*e.g.*, Microsoft Word), computer presentations (*e.g.*, PowerPoint slides), spreadsheets (*e.g.*, Excel), image files (*e.g.*, jpg), and Structured Data.

4.  "**Electronically Stored Information**" or "**ESI**," as used herein, has the same meaning as in Federal Rules of Civil Procedure 26 and 34.

5.  "**Hard-Copy Document**" means Documents existing in tangible form, including but not limited to paper Documents.

6.  "**Hash Value**" is a unique numerical identifier that can be assigned to a file, a group of files, or a portion of a file, based on a standard mathematical algorithm applied to the characteristics of the data set. The most commonly used algorithms, known as MD5 and SHA, will generate numerical values so distinctive that the chance that any two data sets will have the same Hash Value, no matter how similar they appear, is less than one in one billion. "Hashing" is used to guarantee the authenticity of an original data set and can be used as a digital equivalent of the Bates stamp used in Hard-Copy Document productions.

7.  "**Load file**" means an electronic file provided with a production set of document images that facilitate the loading of such information into a Requesting Party's document review platform, and the correlation of such data in the platform.

8.  "**Metadata**" means (i) information embedded in or associated with a file that is not ordinarily viewable or printable from the application that generated, edited, or modified such native file which describes the characteristics, origins, custody, usage, and/or validity of the electronic file; (ii) information generated automatically by the operation of a computer or other information technology system when a native file is created, modified, transmitted, deleted, or

otherwise manipulated by a user of such system; (iii) information, such as Bates numbers, created during the course of processing Documents for production; and/or (iv) information about the source of Documents or data including the custodian or non-custodial data source.

9.      **"Media"** means an object or device, real or virtual, including but not limited to a disc, tape, computer, or other device on which data is or was stored.

10.      **"Native Format"** means and refers to the format of ESI in which it was generated and/or as used by the Producing Party in the usual course of its business and/or in its regularly conducted activities.

11.      **"Optical Character Recognition"** or **"OCR"** means the optical character recognition file which is created by software used in conjunction with a scanner that is capable of reading text-based Documents and making such Documents searchable using appropriate software.

12.      **"Party"** or **"Parties"** means Plaintiffs and Defendants.

13.      **"Producing Party"** means the Party producing Documents in response to any Request for Production of Documents pursuant to Federal Rule of Civil Procedure 34(a) or for any other reason.

14.      **"Request for Production"** means Documents requested pursuant to Federal Rule of Civil Procedure 34(a), or for any other reason.

15.      **"Requesting Party"** means the Party requesting Documents in any Request for Production of Documents, or receiving Documents in response to any Request for Production of Documents, pursuant to Federal Rule of Civil Procedure 34(a), or for any other reason.

16. "**Searchable Text**" means the native text extracted from an Electronic Document or any Optical Character Recognition text ("**OCR text**") generated from a Hard-Copy Document or electronic image.

17. "**Structured Data**" means ESI stored in a structured format, such as databases or data sets according to specific form and content rules as defined by each field of the database.

18. "**Third Party**" or "**Non-Party**" means any other person or entity other than the Parties.

19. "**Unitization**" means a set of paper-scanned images or electronically processed files, and indicates where individual pages or files belong together as Documents, including attachments, and where each Document begins and ends.

## IV. SEARCH AND IDENTIFICATION

1. **Custodians**. The Parties will agree upon an initial list of custodians (or present any disputes to the Magistrate Judge), which will be subject to the Producing Party's ongoing good faith efforts to identify the custodians most likely to have responsive information. The Parties agree that in responding to Requests for Production of Documents, the Parties shall meet and confer to negotiate a list of custodians for which they intend to search the files. The final list of custodians shall be agreed upon by the Parties or determined upon relief from the Magistrate Judge. The parties agree to produce organizational charts, to the extent reasonably available following a diligent search, that may be used to identify the reporting lines of any custodians agreed upon by the parties. For targeted collections conducted pursuant to this protocol, Documents may be collected from all reasonably accessible sources within the possession, custody, or control of the Parties or the custodian, including, *inter alia*, the agreed-upon custodians' local hard drives, network home drive, personal shared drives, cloud storage locations, email accounts (including any personal email accounts if such accounts contain

responsive Documents), removable or portable Media (including thumb or flash drives, external hard drives, CDs or DVDs), messaging phones, tablets, social media, short message format including without limitation SMS, Apple iMessage, Skype, Bloomberg, Signal, WhatsApp, Facebook Messenger, Telegram, Snapchat, Mattermost, Dust, Viber, Threema, Silence, Wire, Wickr, Line, Voxer, Smiley Private Texting, CoverMe, and Slack, Zoom or other videoconference chat and videos, Hard-Copy Documents, and any other source to the extent that the source may contain reasonably accessible, potentially responsive information as identified by the custodians. The Parties agree that if the Producing Party determines a source is not "reasonably accessible" pursuant to Federal Rule of Civil Procedure 26(b) during the search and collection process it will meet and confer with the Requesting Party regarding the accessibility of the source. If the Parties disagree as to the accessibility of the source after a good faith meet and confer, the Party seeking discovery from the source may submit the issue to the Magistrate Judge in accordance with the Court's procedures. The Parties agree that for those custodians who are former employees of a Producing Party, the Producing Party will search for and collect, if available, the former employee's hard drive, home drive and email that the former employee used at the time of departure from the Producing Party. Subject to the Parties' objections and responses to Requests for Production of Documents, and subject to the Parties' Protective Order (ECF No. 65) or any subsequent order, the Parties shall begin producing responsive, non-privileged Documents, on a rolling basis, from the files of the identified custodians. The Parties agree to work together in good faith to prioritize and sequence the custodial productions of deponents, and any discrete document collections or databases that pertain to those deponents, such that these documents are produced with sufficient time to review prior to their depositions. The Parties agree to take any unresolved disputes on same promptly to the Magistrate Judge.

2.      **Non-Custodial Sources**. Following the exchange of any necessary additional information relating to any identified non-custodial source, the Parties will agree upon an initial list of non-custodial sources (or present any disputes to the Magistrate Judge), such as departmental/project/collaborative/shared storage spaces, shared drives, departmental emails, internal intranet, Structured Data stores, application data, source code repositories, social media, databases, document management systems (such as eRooms, SharePoint, Salesforce), record management systems (RMS), content management systems (CMS), file servers, SANs, NASs, web servers, on line data stores such as Dropbox, Box and Google Drive, that will be searched to identify potentially responsive Documents.  Subject to the Parties' objections and responses to requests for production of Documents, and subject to the Parties' Protective Order, the Parties shall begin producing responsive, non-privileged Documents, on a rolling basis, from the identified non-custodial sources.

3.      **Structured Data.** Where a discovery request requires production of Structured Data, in lieu of producing Structured Data systems or applications, the Parties shall meet and confer on the content and format of a data sample from such Structured Data source.  The Parties shall discuss and attempt to agree upon the sets of data or fields to be included in the sample and the format in which sample data extracted shall be produced, and the Producing Party shall make all disclosures necessary for the Requesting Party to understand and evaluate whether the content and format of the data sample would satisfy a production request, such as the data fields available, the meaning of data fields, as well as codes and abbreviations used in the data source and whether a data dictionary exists, the time period over which data exists, any database scheme, or other relevant information.  The Producing Party shall generate a report of such data sample for review by the Requesting Party or counsel after meeting and conferring with the

Requesting Party as to the fields to be produced and the format of production. The Parties reserve all rights to object, including but not limited to objections for relevance, undue burden, and/or inaccessibility.

4. **Obligation to Supplement.** To extent the Parties become aware of Additional Custodians or Non-Custodial Data Sources, the Parties will supplement pursuant to obligations under Federal Rule of Civil Procedure 26(e). Plaintiffs reserve the right to request, at any time prior to the close of discovery, to seek production of additional Custodians or Non-Custodial Data Sources whose relevance was discovered after the initial designations, or for other good cause shown. If Defendants object to the inclusion of such custodial or non-custodial sources, the Parties will meet and confer to resolve the matter; if the Parties cannot reach resolution, the Parties agree to raise the issue with the Magistrate Judge.

5. **Known Documents**. Documents identified in a custodial or non-custodial file that is being produced by the Producing Party, which are known to be responsive to a discovery request shall be produced without regard to whether it was responsive to any search methodology described herein or developed in accordance with this Protocol, unless Counsel specifically identifies the documents being withheld pursuant to a specific objection.

6. **Folders/Collections of Documents.** Those portions of the Defendants' documents representing discrete folders or collections of information that are reasonably known to contain documents likely to be responsive to a discovery request, such as relevant folders of ESI that are identified or segregated by the Producing Party in connection with its efforts to provide discovery from agreed-upon non-custodial sources pursuant to this Order, shall be identified and collected without the use of search terms or any other content-based filtering to cull or limit the scope of Documents from the discrete set or grouping. Notwithstanding a

Party's awareness that a discrete collection is likely to contain responsive information, a Producing Party may, in good faith, withhold Documents from any such discrete collection based on responsiveness, confidentiality, privilege, or other protection(s) from disclosure or production. The Parties will meet and confer in the event the Producing Party believes that such a review of a discrete document folder or collection of information would be unduly burdensome and disproportionate to the needs of the case. A Requesting Party may also request that the Parties meet and confer if it identifies any deficiency in the productions.

7. **Search Queries and Methodologies**. Pursuant to Federal Rule 26(f), the Parties shall confer on the application, if any, of search or other filtering technologies, including reasonable search terms, file types, date ranges, validation processes, predictive coding, or other appropriate advanced technology, including systems used to track review status related to those advanced technologies. No Party shall use predictive coding/technology-assisted-review for the purpose of culling the documents to be reviewed or produced without notifying the opposing party prior to use and with ample time to meet and confer in good faith regarding a mutually agreeable protocol for the use of such technologies. The Parties agree that in responding to Requests for Production of Documents, the Parties shall meet and confer to negotiate a list of search terms and/or other parameters or methods they intend to use to harness and identify documents and other evidence for production. The Parties may add, change or supplement these upon agreement or upon relief from the Magistrate Judge. The Producing Party will provide a search term hit list or hit report for these search terms and for the custodians. The report may be created after global de-duplication, but should include the number of documents that hit on each term, the number of unique documents that hit on each term (documents that hit on a particular term and no other term on the list), and the total number of documents that would be returned by

using the proposed search term list, including families. The Parties will use best efforts to agree to a set of search terms and custodians within two weeks of receipt of the initial search term report. The Parties retain the right to request that additional search terms be run from additional custodial or non-custodial sources and agree to meet and confer regarding such requests. The Parties are expected to work in a cooperative, collaborative, and iterative manner, in order to reach agreement upon a reasonable search methodology. To the extent the Parties are unable to reach agreement on the application of, or procedures for, any search or filtering processes, the Parties shall raise such issues for resolution by the Magistrate Judge. The Parties recognize that as the litigation evolves, there may be a need to supplement earlier agreed methods or search terms to enhance or improve the identification of potentially relevant ESI. Accordingly, the Parties shall meet and confer as needed to facilitate the reasonable identification of potentially relevant ESI.

8. **Additional Requests for Documents**. Nothing in this Order shall preclude a party from serving additional Requests for Production at any time prior to the close of fact discovery. Nothing in this Order shall be deemed to be a waiver of any Party's right to reasonably seek agreement from the other Parties, or a Court ruling, to modify proposed or previously agreed-to search terms, techniques, or tools (including any proposed as supplements).

9. **System Files**. The Parties shall meet and confer on methods for excluding certain files and folders that are reasonably identified as system files and not likely to contain user-created files.

10. The mere fact that a document is hit or captured by the application of any agreed upon search terms does not mean that such document is necessarily responsive to any

propounded discovery request or is otherwise relevant to this litigation. Determinations of discoverability, responsiveness and privilege shall be made by the Producing Party.

## V. GLOBAL DE-DUPLICATION.

1. To the extent exact duplicate Documents reside within a Producing Party's ESI data set, the Producing Party shall produce only a single, deduplicated copy of a responsive Document. "Exact duplicate" shall mean bit-for-bit identity of the Document content with exact Hash Value matches. The Parties further agree that an email that includes content in the "BCC" or other blind copy field shall not be treated as a duplicate of any otherwise identical email that does not include content in the "BCC" or other blind copy field.

2. To the extent a Party de-duplicates its Documents, it shall de-duplicate stand-alone Documents or entire Document families in their ESI sources by the use of MD5, SHA-1, or SHA256 Hash Values. Where any such Documents have attachments, Hash Values must be identical for both the Document plus-attachment (including associated Metadata) as well as for any attachment (including associated Metadata) standing alone.

3. A Producing Party shall de-duplicate Documents across custodians and populate a field of data that identifies each custodian who had a copy of the produced Document (the "Duplicate Custodian" field) in addition to a separate field of data identifying the custodian whose Document is produced; such de-duplicated Documents shall be deemed produced from the custodial files of each such identified custodian for all purposes in this litigation, including for use at deposition and trial. A Producing Party shall use a uniform description of a particular custodian across productions. Multiple custodians in the "Duplicate Custodian" field shall be separated by a semicolon. Entity/departmental custodians should be identified with a description of the entity or department to the extent applicable.

4.      No Producing Party shall identify and/or eliminate duplicates by manual review or some method other than by use of the technical comparison using MD5 or SHA-1 Hash Values outlined above.

5.      Hard-Copy Documents shall not be eliminated as duplicates of ESI.

6.      If the Producing Party makes supplemental productions following an initial production, that Producing Party also shall provide with each supplemental production an overlay file to allow the Requesting Party to update the "Duplicate Custodian" field. The overlay file shall include all custodians listed in the "Duplicate Custodian" field in prior productions and any custodians newly identified in the current supplemental production.

## VI.    FORMAT OF PRODUCTION

1.      **ESI to be Produced in Native Form**. Microsoft Excel and other spreadsheets; Microsoft Word and other word processing files; Microsoft PowerPoint and computer slide presentations; PDFs; media files, such as audio, photo/image, and video files; and other file types that are poorly represented, substantively limited, or degraded when produced in the format specified in Section VI.3, shall be produced in their Native Format. Files produced in Native Format shall be named either with a sequential Bates number followed by the file name or with a sequential Bates number followed by the Confidentiality Designation, if applicable, and the file name. A placeholder TIFF with the original file name, the language "Document Produced in Native" (or similar language), and stamped with assigned Bates number and Confidentiality Designation shall be included for each native file produced. When the native file is produced, the Producing Party shall preserve the integrity of the electronic document's contents, *i.e.*, its original formatting and Metadata. To the extent native files, other than spreadsheets or media files, are properly subject to redaction, production shall be made in TIFF format in accordance with the section on redacted Document and not in Native Format. Spreadsheets requiring

redaction will be redacted within the native file, and the redacted native file will be produced as provided in this paragraph; the Parties shall reasonably confer to the extent a Producing Party contends that a media file requires redaction. A Requesting Party reserves the right to request reprocessing of any such productions if they lack sufficient Metadata or are otherwise unusable, and to seek relief from the Magistrate Judge if such a request is denied.

2. **Databases and Structured Data.** The Parties will meet and confer to address the production and production format of any responsive data contained in a database or other structured or aggregated data source or otherwise maintained by an application (*e.g.*, Microsoft Teams, Slack, Microsoft Access, SharePoint, Oracle, Salesforce, ACT!, or any other messaging or proprietary databases). The Parties will reasonably cooperate in the exchange of information concerning such databases to facilitate discussions on a reasonably useable production format. If the Parties cannot reach agreement, the matter will be decided by the Magistrate Judge.

3. **Non-Redacted Electronically Stored Information Not Produced in Native Form.** Non-redacted ESI (in formats other than those subject to automatic Native Format production under VII.1 above, or subject to conference regarding Structured Data under VII.2 above) should be produced in a form that retains the material characteristics of the ESI in its native form (*i.e.,* the information, image, searchability, and utility) maintained in the normal course of the Producing Party's business. Such ESI may be produced in single-page, black and white, 300 DPI, Group IV TIFF image file format together with Concordance or Summation Load Files (OPT or DII files) (depending on the preference of the Requesting Party). Specifications for the Load Files are listed in the **Appendix A**. TIFFs of ESI shall convey the same information and image as the original Document, including all commenting, versioning, and formatting that is visible in any view of the Document in its native application. Non-

redacted ESI shall be produced with searchable extracted text of the entire Document (at the Document level in a .TXT file) and Metadata fields as listed in **Appendix B** in a Concordance .DAT file, where applicable.

Except as otherwise provided herein, **Appendix B** does not create any obligation to create or manually code fields that are not automatically generated by the processing of the ESI or that do not exist as part of the original Metadata of the Document. The parties acknowledge there can be differences between the Operating System (Windows or other) and Application date/time and agree that the Producing Party has no obligation to try and reconcile the differences, if any.

The relationship between related Documents (*e.g.*, email attachments and parent emails) should be preserved. All relevant Electronic Documents attached to an email should be produced contemporaneously and sequentially immediately after the parent email, and shall bear Metadata reflecting the relationship.

Parties may request the production of Documents in Native form by Bates number in the event that a Document produced in TIFF form is illegible, and to seek relief from the Magistrate Judge if such a request is denied.

4.      **Hard-Copy Documents**. Hard-Copy Documents should be produced as single-page, black and white, 300 DPI, Group IV TIFF image file format together with Concordance or Summation Load Files (depending on the preference of the Requesting Party) with coded data contained in a separate file. The Producing Party shall also provide Document-level OCR text files to accompany the TIFF format production. In scanning all Hard-Copy Documents, Hard-Copy Documents should be logically unitized. Accordingly, distinct Documents should not be merged into a single record, and single Documents should not be split into multiple records. In

the case of an organized compilation of separate Documents (for example, a binder containing several separate documents behind numbered tabs), each of the Hard-Copy Documents should be separately scanned, but the relationship among the Documents in the compilation should be reflected in the proper coding of the beginning and ending Documents and attachment fields. The Parties will make their best efforts to Unitize the Documents correctly. For Documents found in folders or other containers with labels, tabs, or other identifying information, such labels and tabs shall be scanned where reasonably practicable. Pages with Post-It notes shall be scanned both with and without the Post-it, with the image of the page with the Post-it preceding the image of the page without the Post-It. Original Document orientation (*i.e.*, portrait v. landscape) should be maintained. Producing Hard-Copy Documents as provided herein does not change their character from Hard-Copy Documents into ESI. For Hard-Copy Documents, the Parties need only populate the following Metadata fields: "BEGDOC," "ENDDOC," "PROD VOLUME," "CUSTODIAN," "SOURCE," "CONFIDENTIAL," "REDACTION," and "COMPANY" fields, as well as "BEGATTACH" and "ENDATTACH" fields where applicable.

5.      **Redacted Documents.** A Producing Party may use redactions to protect attorney-client or work product privileges consistent with any operative Order concerning privilege that is agreed upon by the Parties and/or entered in this Litigation. Absent further order from the Magistrate Judge or agreement of the Parties, no redactions for relevance may be made within a produced document. To the extent that a Producing Party maintains that an otherwise responsive document contains certain highly sensitive information that should be redacted for reasons other than those permitted by this Paragraph, the Producing Party and Requesting Party shall meet and confer concerning the proposed treatment of such information. If the Parties do not agree, the Producing Party may submit the document to the Magistrate Judge under seal for review in

camera and seek an order concerning the appropriate treatment of the disputed information.  Any redactions shall be clearly indicated on the face of the Document, with each redacted portion of the Document stating that it has been redacted and the basis for the redaction, and a Metadata field shall indicate that the Document contains redactions and the basis for redaction (*e.g.*, "A/C Privilege").  Where a responsive Document contains both redacted and non-redacted content, the Producing Party shall produce the remainder of the non-redacted portions of the Document and the text/OCR corresponding to the non-redacted portions, as well as the Metadata required under this Protocol. Email header information (*e.g.*, date, subject line, etc.) should not be redacted unless it is independently privileged.  The production of a Document in a redacted form does not affect the Producing Party's obligation to timely assert and substantiate the assertion of privilege over the content in a privilege log.  Redacted ESI, other than spreadsheet files (that will be produced as redacted native files) and media files (about which the Parties shall confer), will be produced as TIFFs with applicable metadata and extracted or OCR searchable text as specified in Section VI.3 ("TIFFs of Redacted ESI").  The Producing Party shall honor reasonable requests for the production of particular redacted Documents in other formats where the TIFF image is not reasonably usable.

6. **TIFFs of Redacted ESI**. TIFFs of redacted ESI shall convey the same non-redacted information and image as the original Document, including all non-redacted elements and formatting that are visible in any view of the Document in its native application, and each redacted area must bear a label containing the reason for the redaction.  Specifically, all Documents that contain comments, deletions, and revision marks (including the identity of the person making the deletion or revision and the date and time thereof), color, speaker notes, or other user-entered data that the source application can display to the user will be processed such

that all that data is visible in the image. All hidden text will be expanded, extracted, and rendered in the TIFF file and the Producing Party will instruct its vendor to force off Auto Date. TIFFs of Redacted ESI shall be produced with the load files, metadata, and text as specified by Appendices A and B.

7. **Document Unitization for Hard-Copy Documents**. If a Hard-Copy Document consists of more than one page, the Unitization of the Document and any attachments and/or affixed notes shall be maintained as it existed in the original Document, so that each page will not be split, but instead sequenced and saved together, as they existed in the original.

8. **Parent-Child Relationship**. The Parties acknowledge and agree that parent-child relationships within a Document family (the association between an attachment and its parent Document or between embedded Documents and their parent) shall be preserved. Responsive non-privileged Electronic Documents attached to an e-mail or embedded within other Electronic Documents, and Hard-Copy Documents, attached or appended to Hard-Copy Documents, must be mapped to their parent by the beginning Bates number and immediately follow that parent file in the sequence of the production. Email attachments and embedded files or links "BEGATTACH" and "ENDATTACH" fields listing the unique beginning Bates number of the parent Documents and ending number of the last attachment must be populated for each child and parent Document. If any member of a family group is produced, all members of that group must also be produced or else logged as privileged.

9. **Encrypted or Password-Protected**. For any Documents that exist in encrypted format or are password-protected, the Producing Party will reasonably attempt to produce such materials in a format that permits the Requesting Party to access the contents of those materials,

or, if reasonably practicable, will provide the Requesting Party a means to gain access to those native files (for example, by supplying passwords, to the extent reasonably available).

10. **Load Files**. Each production of Documents shall be accompanied by Concordance and comma delimited Load Files (.dat and .opt) containing a field with the full path and filename to files produced in Native Format and also containing Metadata fields identified in **Appendix B**, to the extent the information is available in the original ESI file (except for vendor-generated fields related to the litigation production, such as "BEGDOC", "ENDDOC", bases for redaction, and Confidentiality Designations). All Metadata shall be provided in UTF-8 with Byte Order Mark format.

11. **Text Files**. For all Documents containing extracted full text or OCR text, the Producing Party shall provide searchable Document-level .txt files (named using the Bates start "BEGDOC"), which shall reside in the text subdirectory of each production volume alongside corresponding separate image and native subdirectories. Electronic text must be extracted directly from the native electronic file unless the Document requires redaction, is an image file, or is a native electronic file that does not contain text to extract (*e.g.*, non-searchable PDFs). In these instances, and in the case of imaged Hard-Copy Documents, a text file shall be created using OCR and shall be produced in lieu of extracted text. Extracted text shall be provided in UTF-8 with Byte Order Mark format text. Extracted text shall include all comments, revisions, tracked changes, speaker's notes and text from Documents with comments or tracked changes, and hidden worksheets, slides, columns and rows.

12. **Text Extracted from Emails**. Text extracted from emails shall include all header information that would be visible if the email was viewed in Outlook including: (1) the individuals to whom the communication was directed ("To"), (2) the author of the email

communication ("From"), (3) who was copied and blind copied on such email ("CC" and "BCC"), (4) the subject line of the email ("RE" or "Subject"), (5) the date and time of the email, and (6) the names of any attachments.

13.    **Email Thread Suppression:** No email may be withheld from production solely because it is included in whole or in part in a more inclusive email.

14.    **Social Media**. Responsive ESI may, but does not necessarily, include social media websites (*e.g.*, LinkedIn, Facebook, Twitter, internal intranet social media, etc.).  The Parties agree to meet and confer on the production and production format, including Metadata, for social media.

15.    **Bates Numbering**. Each page of a produced image shall have a unique Bates number electronically "burned" onto the image at a location that does not unreasonably obliterate or obscure any information from the source Document. Each TIFF image or native file assigned a Bates number shall be assigned a Bates number that is unique and maintains a constant length across the entire Document production.  No other legend or stamp will be placed on the Document image other than confidentiality legends (where applicable) or redactions.

16.    **Confidentiality**. Electronic data produced in discovery may be labeled with Confidentiality Designations. In the case of TIFF images, confidentiality legends shall be "burned" onto the image at a location that does not unreasonably obliterate or obscure any information from the source Document and the designation shall be supplied in the fielded data. For materials produced in Native Format, the Producing Party shall supply fielded data identifying the confidential treatment of each Document designated for confidentiality and will endorse the TIFF placeholder accompanying the native file with the appropriate Confidentiality Designation, and shall name the file with the Bates number followed by the Confidentiality

Designation and the file name. A Producing Party's failure to make a designation through fielded data, an endorsing of the TIFF image, or a naming of the file may be corrected by notifying the Requesting Party of the mistaken designations of confidential materials.

17.     **Color**. Documents containing color shall be produced in color, as single-page, 300 DPI JPG images with JPG compression and a high quality setting as to not degrade the original image.  The Producing Party shall comply with reasonable requests by the Requesting Party to determine whether a produced black-and-white TIFF's native or hardcopy original version contains color, and to provide replacement files in those circumstances.

18.     **OCR**. OCR software shall be set to the highest quality setting during processing.

19.     **Foreign Language Documents**. English is the official language of Philips, and review of documents collected to date confirms this.   To the extent that foreign language documents are identified in the course of review, those documents will be produced in their original language.

20.     **No Withholding of Documents Within A Family.** If any member of a family group is produced, all members of that group must also be produced or else logged as privileged.

21.     **ESI Date and Time Processing**. Each Party's ESI should be processed using Eastern Standard Time (EST).

22.     **Embedded Objects**. Some Microsoft Office and .RTF files may contain embedded objects. Such objects typically are the following file types: Microsoft Excel, Word, PowerPoint, Project, Outlook, Access and PDF. Subject to claims of privilege and immunity, as applicable, objects with those identified file types shall be extracted as separate files and shall be produced as attachments to the file in which they were embedded unless otherwise subject to an exception provided within this Order.

23.     **Compressed Files.** Compressed file types (*i.e.*, .CAB, .GZ, .TAR. .Z, .ZIP) shall be decompressed in a reiterative manner to ensure that a zip within a zip is decompressed into the lowest possible compression resulting in individual files before responsiveness review or the application of any filtering or culling technologies.

24.     **No Designation of Discovery Requests.** Production of hard copy documents and ESI in the reasonably usable form set out in this Stipulation need not include any reference to the requests to which a document or ESI may be responsive.

25.     **Procedure Upon Receipt of Request for Erasure Pursuant to Data Protection Laws.** If during the course of litigation, a Producing party receives a well-founded request for erasure of personal data pursuant to any applicable data protection law, the Producing Party shall notify Requesting Parties of the request, and use best efforts to furnish newly redacted, replacement versions of the Discovery Material, as defined in the Protective Order (ECF No. 65), that eliminate the personal data at issue. The parties agree that for purposes of this provision, "personal data" shall not be construed to mean the names, positions, titles, or professional contact information (work address, work email, etc.) of the current or former employees of any Defendant or of third parties identified in relevant, responsive documents, data, or information produced in discovery in this Action. If a Requesting party objects to the replacement, the parties will meet and confer. If the parties are unable to reach agreement, the Producing party may seek relief from the Magistrate Judge.

26.     **Production Media**. Documents shall be produced on CDs, DVDs, USB hard drives, portable hard drives or through secure file transfer protocols (*e.g.*, FTP) or similar secure electronic transmission ("Production Media"). Each piece of Production Media shall be encrypted and assigned a production number or other unique identifying label ("Production

Volume Number") corresponding to the date of the production of Documents on the Production Media as well as the sequence of the material in that production, and shall include (a) the name of the Litigation and the case number; (b) the identity of the Producing Party; (c) the production date; (d) the Bates Number range of the materials contained on such Production Media item; and (e) the Production Volume Number of the Production Media. The Producing Party shall accompany all Document productions with a transmittal cover letter with information sufficient to identify all accompanying media, together with a production log, in Excel spreadsheet format, updated with each production, identifying (1) the date of production, (2) the production wave or volume, (3) the Bates ranges for the documents encompassed within the production, and (4) general description of subject matter of the production (*i.e.*, regulatory documents, custodial documents of Jane Doe, etc.). If the Producing Party produces Documents via secure FTP site, the Producing Party shall specify the date through which the materials will remain available via the secure FTP site and the Producing Party shall, within a reasonable time, accommodate requests from another Party or Parties that Documents be reposted to the FTP site.

27. **Replacements.** All files that are replaced for any reason must be annotated with an "R" designation appended to the Bates prefix. A cross reference file will be provided identifying the Document's original Bates and its replacement Bates number.

28. **Use at Deposition**. Any Document produced in native that a party identifies and/or marks as an exhibit at a deposition must include as part of that identification or exhibit the produced corresponding cover page in TIFF image format, endorsed with Document's Bates Number and Confidentiality Designation.

29. **Lost, Destroyed or Irretrievable ESI**. If a Producing Party learns that responsive ESI that once existed was lost, destroyed, or is no longer retrievable as a result of acts

or circumstances not occurring in the ordinary course of business, the Producing Party shall explain where and when the responsive ESI was last retrievable in its original format and to disclose the circumstances surrounding the change in status of that responsive ESI, whether that information is available from other sources, and whether any backup or copy of such original responsive ESI exists. For the avoidance of doubt, responsive ESI that is lost or destroyed or that becomes irretrievable while subject to a litigation hold notice will be considered as not occurring in the ordinary course of business and will be subject to the requirements of this provision.

30. **Deviation from Production Specification**. If a particular Document or category of Documents warrant a different format, the Parties will cooperate in good faith to arrange for a mutually acceptable production format.

## VII. MISCELLANEOUS

1. **Third-Party Documents**. A Party that issues a Non-Party subpoena ("Issuing Party") shall include a copy of this Order with the subpoena and state that the Parties to this Litigation have requested that Third Parties produce Documents in accordance with the specifications set forth herein. Within 14 days of receiving any Documents obtained pursuant to a Non-Party subpoena, the Issuing Party shall produce such Documents to all other Parties, except where the Third-Party Documents are to be used in a deposition, in which case the Issuing Party shall produce such Documents to all other Parties within 14 days of receiving such Documents or no later than three (3) days prior to the deposition, whichever is sooner, or as soon as reasonably practicable if such production occurs thereafter. Nothing in this Order is intended or may be interpreted to narrow, expand, or otherwise affect the rights of the Parties or Third Parties to object to a subpoena. If the Non-Party production is not Bates-stamped, the Issuing

Party will endorse the Third-Party Documents with unique Bates prefixes and numbering scheme prior to reproducing them to all other Parties.

2. **No Effect on Discovery or Admissibility**. This Order does not address, limit, or determine the relevance, discoverability, agreement to produce, or admissibility of ESI. Nothing in this Order shall be construed to affect the admissibility of any Document or data. All objections to the admissibility of any Document or data, except as to the authenticity of the Documents produced by a Party as to which that Party stipulates, are preserved and may be asserted at any time.

3. **Protective Order**. All Documents produced by the Parties will be subject to the terms of the Protective Order (ECF No. 65), and any subsequent order, entered in this Litigation.

4. **Modification.** This Order may be modified by a Stipulated Order of the Parties or by the Court for good cause shown.

**SO ORDERED**:

Dated:     Brooklyn, New York
            April 3          , 2025

*Marcia M. Henry*
MARCIA M. HENRY
United States Magistrate Judge

**SO STIPULATED AND AGREED**.

Dated: February 25, 2025

Respectfully submitted,

**POMERANTZ LLP**
*/s/ Emma Gilmore*
Jeremy A. Lieberman
Emma Gilmore
Villi Shteyn
600 Third Avenue
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
jalieberman@pomlaw.com
egilmore@pomlaw.com
vshteyn@pomlaw.com

*Lead Counsel for Lead Plaintiffs and the*
*Proposed Class*

**BRONSTEIN, GEWIRTZ &**
**GROSSMAN, LLC**
Peretz Bronstein
60 East 42nd Street, Suite 4600
New York, New York 10165
Telephone: (212) 697-6484
Email: peretz@bgandg.com

*Additional Counsel for Lead Plaintiffs and the*
*Proposed Class*

*/s/ William B. Monahan*
Sharon L. Nelles
William B. Monahan
Thomas C. White
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
(212) 558-4000

*Counsel for Koninklijke Philips N.V. and*
*Frans van Houten*

# APPENDIX A
## LOAD FILE FORMATS

**Image Load Files**

- Every Document referenced in a production image Load File must have all corresponding images, text and Metadata.
- The name of the image Load File must mirror the name of the delivery volume and should have a .LFP, or .OPT extension.
- The volume names must be consecutive (*e.g.*, ABC001, ABC002...). If, for any reason, the volume names are not consecutive, that fact and the reason for the discrepancy shall be promptly disclosed to the party receiving the Documents.
- The Load File must contain one line per image.
- Every image in the delivery volume must be contained in the image Load File. The image key must be named the same as the Bates number of the image.
- Load Files must not span across Media.

**Metadata Load Files**

- Metadata files should be encoded in UTF-8 format.
- The Metadata Load File must use the following delimiters: Column delimiter:

  - ASCII 020
  - Text qualifier: ASCII 254
  - New line: ASCII 174

- Data for Documents must be produced in only one data Load File throughout the productions, unless that Document is noted as being a replacement Document.
- The first record must contain the field names in the order of the data set forth in **Appendix B**.
- All date and time fields must be produced in "MM/DD/YYYY" and "HH:MM:SS AM/PM (EST)" format, null dates will be blank
- A carriage-return line-feed must be used to indicate the start of the next Document. Load Files must not span across Media.
- The name of the Metadata Load File must mirror the name of the delivery volume, and must have a .DAT extension.
- The volume names must be reasonably consecutive (*e.g.*, ABC001, ABC002...).

## APPENDIX B
## METADATA FIELDS

| FIELD NAME | SAMPLE DATA | FIELD DESCRIPTION | APPLICABLE FILE TYPE(S) |
|---|---|---|---|
| BEGBATES | ABC000001 | Beginning production number or Bates number for a given file/Document | E-mail and E-Doc |
| ENDBATES | ABC000002 | Ending production number or Bates number for a given file/Document | E-mail and E-Doc |
| BEGATTACH | ABC000001 | Beginning production number or Bates number for the attachment range | E-mail and E-Doc |
| ENDATTACH | ABC000015 | Ending production number or Bates number for the attachment range | E-mail and E-Doc |
| CUSTODIAN(S) | Smith, John; Brown, Julie | Name of person or other data source (non-human) from where Documents/files are produced. *Where redundant names occur, individuals should be distinguished by an initial which is kept constant throughout productions* | All |
| AllCustodians | | List of all custodians associated with Document, *i.e.* "Custodian" + "Other Custodian" values delimited by semi-colon. | All |

| FIELD NAME | SAMPLE DATA | FIELD DESCRIPTION | APPLICABLE FILE TYPE(S) |
|---|---|---|---|
| DocumentType | | Descriptor for the type of Document: **"E-document"** for electronic Documents not attached to e-mails; **"E-mail"** for all e-mails; **"E-attachment"** for files that were attachments to e-mails; and **"Physical"** for Hard-Copy physical Documents that have been scanned and converted to an electronic | All |
| SUBJECT/Title | Meeting Minutes | Subject line extracted from e-mail message or title from operating system Metadata | E-mail and E-Doc |
| MSGID | | Email system identifier assigned by the host email system. This value is extracted from parent message during processing | E-mail |
| PST/OST filename | | PST/OST filename | E-mail |
| Folder | | Folder location of the e-mail within the PST/OST | E-mail |
| FROM | Smith, John | Sender | E-mail |
| TO | Jones, Tom; Brown, Julie | Recipient | E-mail |
| CC | Cain, John | Copyee | E-mail |
| BCC | Stevens, Lisa | Blind Copyee | E-mail |
| PAGES | 12 | Number of pages in the Document | E-Doc |
| VOLUME | 2 | Number on production Media or number of online transmission | All |

| FIELD NAME | SAMPLE DATA | FIELD DESCRIPTION | APPLICABLE FILE TYPE(S) |
|---|---|---|---|
| PARENTMSGID/ Group ID | | Where the item is an email which is a REPLY or FORWARD, the MSGID of the original email which was REPLIED to or FORWARDED | E-mail |
| DATESENT | 02/08/2008 08:59 | Sent date of an email message in the following format:<br><br>MM/dd/yyyy<br>MM is month | E-mail |
| TIMESENT | 08:59 | Sent time of an email message in the following format:<br><br>HH:mm<br><br>mm is minutes | E-mail |
| DATERCVD | 02/08/2008 | Received Date an email message was received in the following format:<br>MM/dd/yyyy<br><br>MM is month | E-mail |
| TIMERCVD | 08:59 | Received time an email message was received in the following format:<br><br>HH:mm<br><br>mm is minutes | E-mail |
| E-mail Outlook Type | .msg | Type of Outlook item, *e.g.*, e-mail, calendar item, contact, note, task | Outlook or similar system |
| Importance | High Importance | Indicates priority e-mail | E-mail |
| AUTHOR[2] | Smith, John | Name of person who created Document | E-Doc |
| DATECRTD | mm/dd/yyyy | Creation Date | E-Doc |

---

[2]    The parties acknowledge that the Author Metadata field may not reflect the actual author of Document.

| FIELD NAME | SAMPLE DATA | FIELD DESCRIPTION | APPLICABLE FILE TYPE(S) |
|---|---|---|---|
| TIMECRTD | 0:00 AM/PM | Creation Time | E-Doc |
| LASTEDITEDBY | John Smith | Last editor extracted from Document Metadata | E-Doc |
| FILENAME | October Agenda.doc | Original file name of native Document | E-Doc |
| FILE PATH(S) | C:\My Documents\Agenda | Pathway(s) for Documents, including unproduced duplicates; values, delimited by semi-colons, corresponding to ALLCUSTODIANS values | E-mail and E-Doc |
| TEXT PATH | D:001\RET000005.txt | Relative path to Document level text file | E-mail and E-Doc |
| DATE CREATED | 02/08/2008 | Date Document was created in the following format MM/dd/yyyy MM is month | E-Doc |
| TIME CREATED | 08:59 AM | Time the Document was created in the following format HH:mm mm is minutes | E-Doc |
| DATE LAST MODIFIED | 02/08/2008 | Date the Document was last modified in the following format MM/dd/yyyy MM is month | E-Doc |
| TIME LAST MODIFIED | 08:59 AM | Time the Document was last modified in the following format HH:mm mm is minutes. | E-Doc |
| FILEEXT | Msg | File extension of native Document | E-mail and E-Doc |
| FILESIZE | 50kb | Size of the original email or e-Document | E-mail and E-Doc |
| DOCUMENT TYPE | Application/ms word | Describes the type of Document. (mime type) | E-mail and E-Doc |
| PAGE COUNT | 16 | Number of pages for the Document | All |

| FIELD NAME | SAMPLE DATA | FIELD DESCRIPTION | APPLICABLE FILE TYPE(S) |
|---|---|---|---|
| HASH | d131dd02c5e6eec5 694d0 698aff85c2fsch587 6217e ab40045733b8fb78 9 | MD5 or SHA1 Hash Value | E-mail and E-Doc |
| NATIVEFILE PATH | D:\001\ABC00000 5.xls | Path or hyperlink to Documents being produced in native file format | Native |
| CONFIDENTIAL-ITY | Confidential | Indicates the confidentiality designation of the produced Document pursuant to any applicable Protective Order | All |
| ParentDate | mm/dd/yyy | DOCDATE of the parent item | All |
| Exceptions | | Y for Documents that were processing or extractions exceptions, blank/null if not present | All |
| Date Last Printed | mm/dd/yyyy | Date the Document was last printed | All |
| REDACTION | Yes | Indicates whether the Document is redacted | All |
| RedactionReason | Privilege | Basis of redaction. If more than one, separate reasons by semi-colons | All |