

**Emma Gilmore**
Partner

December 24, 2025

The Honorable Edward R. Korman
The Honorable Marcia M. Henry
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:  *Patel v. Koninklijke Philips N.V., et al.*, No. 21-cv-4606-ERK-MMH

Dear Judges Korman and Henry:

The Court should see Defendants' improper request for a stay at this late stage of the proceedings for what it is: a ruse to achieve significant delay of this high-profile litigation, already over four years old, to the financial detriment of the shareholder class. Imposing a stay here will not only fail to advance the very purpose of the PSLRA stay—to deter *frivolous* lawsuits—but will frustrate the Federal Rules of Civil Procedure's overarching purpose of ensuring the speedy administration of justice. Fed. R. Civ. P. 1. The PSLRA provides that "discovery and other proceedings shall be stayed during the pendency of any motion to dismiss." 15 U.S.C. § 78u-4(b)(3)(B). As many courts have explained, this provision imposes an automatic discovery stay only until a court has "sustained the legal sufficiency of the complaint." *See, e.g.*, *In re Salomon Analyst Litig.*, 373 F. Supp. 2d 252, 254-55 (S.D.N.Y. 2015) (Lynch, J.); *In re Turquoise Hill Resources Ltd. Sec. Litig.*, 2024 WL 791545, at *6 (S.D.N.Y. Feb. 26, 2024) (Liman, J.) (stating that the PSLRA stay "discharged that function" where "discovery was delayed" until the complaint stated a viable claim).[1]

Moreover, "[t]he reference in the PSLRA to 'other proceedings' is best understood to 'include litigation activity relating to discovery.'" *In re Turquoise Hill Resources Ltd. Sec. Litig.*,

---

[1] *See also In re Global Crossing, Ltd. Sec. Litig.*, 322 F. Supp. 2d 319, 352 (S.D.N.Y. 2004) (lifting the discovery stay after sustaining claims against one defendant, even though other defendants had moved to dismiss); *In re LeapFrog Enterprise, Inc. Sec. Litig.*, 2017 WL 3263114, at *1 (N.D. Cal. July 28, 2017) (noting that the imposition of the PSLRA stay based on the filing of a subsequent motion to dismiss could lead to abuse and observing that "[a] defendant could file repeated motions for leave to file a motion to reconsider or motions for reconsideration and prolong the PSLRA discovery stay"); *In re Lernout & Hauspie Sec. Litig.*, 214 F. Supp. 2d 100, 104 (D. Mass. 2002) (rejecting defendants' attempts to maintain the PSLRA stay after the court sustained claims against four defendants, while additional defendants had moved to dismiss).

600 Third Avenue, New York, New York 10016   tel: 212.661.1100   www.pomerantzlaw.com

NEW YORK     CHICAGO     LOS ANGELES     PARIS

2021 WL 2201388, at *4 (S.D.N.Y. June 1, 2021) (Liman, J.), citing *Medhekar v. U.S. Dist. Court*, 99 F.3d 325, 328 (9th Cir. 1996) (explaining that the term "other proceedings" includes only "litigation activity relating to discovery" and not "all litigation activity in general"); *see also Petrie v. Elec. Game Card, Inc.*, 761 F.3d 959, 968 (9th Cir. 2014) ("The common sense reading of the PSLRA's plain language 'all discovery and other proceedings shall be stayed' is that no litigant shall take any steps in pursuit of [fact] discovery during the pendency of any motion to dismiss"); *In re Diamond Multimedia Sys., Inc. Sec. Litig.*, 1997 WL 773733, at *3 (N.D. Cal. Oct. 14, 1997) (rejecting "plaintiffs' contention that they are barred from seeking class certification before resolution of defendants' motions [to dismiss]" because "[t]he plain terms of the [PSLRA] make it clear that the reference to 'other proceedings' means other proceedings which relate to discovery matters"). As such, the clear language of the statute as well as relevant jurisprudence make clear that only fact discovery should be stayed while an initial motion to dismiss is pending. Here, where discovery has already been completed, the PSLRA is plainly irrelevant.

This has already been a lengthy proceeding. Plaintiffs filed their lawsuit on August 16, 2021, and more than one year ago, the Court sustained their securities fraud class claims. Dkt. No. 55. ***Fact discovery ended*** on December 15, 2025. Dkt. No. 101. Plaintiffs' motion for class certification is fully briefed. Over the course of fact discovery, Plaintiffs diligently reviewed over 80,000 documents produced by Defendants and deposed close to twenty witnesses. Plaintiffs believe that discovery all but confirmed and strengthened their claims, demonstrating that Defendants made false and misleading statements with intent to deceive investors. As explicitly provided in the Scheduling Order negotiated with Defendants, upon the close of fact discovery on December 15, 2025, Plaintiffs requested leave to amend their complaint to conform to the evidence, adding Philips' current CEO as a defendant, several additional misleading statements similar to the ones already sustained by the Court, as well as two additional corrective disclosures accompanied by stock drops. Dkt. No. 97. The proposed amendments do not expand or enlarge the Class Period (but Plaintiffs believe demonstrate extremely disturbing misconduct by Defendants, *see* Plaintiffs' request for leave to file their proposed third amended complaint ("PTAC"), Dkt. No. 97).[2]

Seizing on Plaintiffs' proposed amendments, Defendants demand a halt to all proceedings, including class certification, expert reports and all subsequent events in the negotiated Scheduling Order until the Court rules on their anticipated motion to dismiss the new allegations in the PTAC. Through this maneuver, Defendants seek to deter Plaintiffs from asserting claims against Philips' current CEO and enlarging the recovery for the class by forcing Plaintiffs to forego those allegations or else be faced with several months of delay or more. In fact, it is hard to see the actual merits behind Defendants' contemplated motion to dismiss. For example, the "newly added misstatements" are akin to those already sustained by the Court. *Compare*, *e.g.*, sustained statements that the devices were "safe" *with* additional proposed misstatements by Defendant van Houten vouching, during conference calls with analysts, that "it's still, to our knowledge, safe to

---

[2] As explained therein, Philips is currently the subject of criminal and civil investigations by the United States Department of Justice, as well as the subject of a sprawling investigation by the Securities and Exchange Commission. *See* Dkt. No.97-1.

use the machines," and "I want to assure everybody on the call that the device is safe to be continued to use to the best of our knowledge at this time." PTAC ¶¶477, 479; *see also* Dkt. No. 97-1. Moreover, in their previous quests to dismiss the prior complaints, Defendants did not bother to challenge loss causation, despite the fact that the complaints pled over a dozen corrective disclosures and accompanying drops. *See*, *e.g.*, SAC ¶¶ 342-458. Defendants' sudden interest in challenging the two additional corrective disclosures in the PTAC appears dubious, to say the least.

Logic and the interests of justice counsel against the imposition of an improper stay here. As Judge Lynch cogently reasoned in *In re Salomon Analyst Litig.*, 373 F.Supp.2d 252, 254-55 (S.D.N.Y. 2005), "[t]he purpose of the statutory stay is to prevent abusive, expensive discovery in frivolous lawsuits by postponing discovery until 'after the Court has sustained the legal sufficiency of the complaint,'" citing S. Rep. No. 104-98 at 14 (1995), reprinted in 1995 U.S.C.C.A.N. 679, 693. "In a case where the court already *has* sustained the legal sufficiency of the complaint this purpose has been served." *Id*. (emphasis in original). Judge Lynch rightly rejected defendants' argument (similar to what Defendants claim here) that the mere filing of any motion to dismiss automatically renews the statutory stay because it has "troubling implications." *Id*. at 255. Judge Lynch explained that "[t]o permit defendants indefinitely to renew the stay simply by filing successive motions to dismiss would be to invite abuse. Some judicial discretion to evaluate the desirability of a renewed stay appears to be necessary."[3]

Citing *Turquoise Hill*, 2024 WL 791545, Defendants argue that misstatements that survive a motion to dismiss are relevant to class certification. But the Court's decision to certify the Class stands or falls on the current allegations in the Second Amended Complaint. In attempting to rebut class certification, the relevant inquiry is whether Defendants have proven a *complete lack* of price impact during the Class Period. *See In re Chicago Bridge & Iron Co. N.V. Sec. Litig.*, 2020 WL 1329354, at *4 (S.D.N.Y. Mar. 23, 2020) ("The Report properly applied the *Waggoner* rule that a party opposing class certification bears the burden of persuasion when rebutting the *Basic* presumption and must demonstrate a complete lack of price impact."), citing *Waggoner v. Barclays PLC*, 875 F. 3d 79, 103 (2d Cir. 2017); *see also Monroe Cnty. Employees' Ret. Sys. v. S. Co.*, 332 F.R.D. 370, 395 (N.D. Ga. 2019) ("the inquiry is whether Defendants have proven a complete lack of price impact during the Class Period"); *City of Cape Coral Mun. Firefighters' Ret. Plan v. Emergent Biosolutions, Inc., HQ*, 322 F. Supp. 3d 676, 687 (D. Md. 2018) ("In any event, the Court finds that Defendants have failed to rebut the presumptions because they do not even argue that there was "no price impact whatsoever."). Here, Defendants have had  the

---

[3] Judge Lynch ultimately stayed proceedings under the unusual circumstances posed by an intervening binding Second Circuit decision that could have "affect[ed] the viability of plaintiffs' complaints." *Id*. at 256. No such extraordinary circumstances arise here.

opportunity to make that showing in their briefs opposing class certification and, as Plaintiffs explained in their reply brief, have failed. *See* Dkt. No. 85-23 at 8-13.

To the extent Defendants seek to challenge the additional corrective disclosures (which, again, do not expand the Class), such arguments should be raised at summary judgment or at trial. *See*, e.g., *In re Mindbody, Inc. Sec. Litig.*, 19-cv-08331, Dkt. No. 93 at 5 (S.D.N.Y.) (Caproni, J) (granting plaintiffs leave to amend complaint adding additional claims and misstatements with evidence obtained in discovery and stating that "Defendants' arguments are more appropriate for summary judgment"). Indeed, whether corrective disclosures reveal new facts is a loss causation argument and Plaintiffs need not show loss causation at the class certification stage. *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 813 (2011). Nor are the proposed amendments needed for the Court to determine whether Plaintiffs can present a damages model capable of measurement on a class-wide basis. *See Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013). That analysis was already performed as part of the class certification briefing. Dkt. No. 85-23 at 2-8.

Overall, the proposed amendments do not expand the Class Period, nor do they modify the class definition. Nor do they add new parties as class representatives. Accordingly, the proposed amendments have no real bearing on whether the class will be certified. In any event, the Court remains free to alter or amend class certification at a later time, "before final judgment." Fed. R. Civ. P. 23(c)(1)(C). Despite this reality, Plaintiffs offered to make their class certification expert, Dr. Nye, available for a limited follow-up deposition should Defendants seek to file a supplemental class certification brief. Defendants rejected that offer and in their letter claim that "it makes no sense to do additional class certification briefing, expert reports and/or expert depositions addressing plaintiffs' new theories if those theories do not survive the forthcoming motion to dismiss." But any potential costs for a single limited deposition and short supplemental briefing do not warrant the renewed imposition of the PSLRA stay, whose sole purpose is to deter *frivolous* lawsuits—which is not the case here.

Moreover, whatever modest cost Defendants would incur from a supplemental briefing on class certification pales in comparison to the loss to the Class resulting from an unwarranted delay. For each billion dollars of damages associated with the alleged fraud (Plaintiffs estimate class-wide losses to be well over $1 billion, resulting from the significant drops in Philips' stock price), a delay of six months alone would cause class members to forego approximately $17.439 million of interest income had they invested (as conservatively as possible) in one-year U.S Treasury Bills, which currently yields approximately 3.5% per annum (as of December 22, 2025). *See In re Vivendi Univeral, S.A. Sec. Litig.*, 284 F.R.D. 144, 163-64 (S.D.N.Y. 2012).

The Court should deny the request for a stay for yet another reason. The Scheduling Order that Defendants negotiated and the Court approved specifically allowed Plaintiffs to move to amend their complaint and add additional parties at the end of fact discovery, without contemplating a stay of subsequent proceedings, such as expert discovery and motions for summary judgment. Dkt. No. 92. Defendants are simply backtracking on their commitments (as

well as flouting the Scheduling Order) by seeking to impose a stay in response to Plaintiffs exercising a right as specifically contemplated by the Scheduling Order.

***Defendants fail to cite a single case*** where Plaintiffs were stopped in their tracks after fact discovery ended. Indeed, in *Sjunde al-Fonden v. General Electric Co.*, 341 F.R.D. 542 (S.D.N.Y. 2022), through the benefit of discovery, plaintiffs sought leave to amend their complaint to add additional misstatements while their motion for class certification was fully briefed. Defendants opposed the request and argued that an amendment would necessitate another motion to dismiss briefing, which would supposedly stay expert discovery and summary judgment. Disagreeing, Judge Furman permitted Plaintiffs to file the amended complaint and concurrently certified the class. There, as here, discovery was largely completed. (Dkt. No. 297 at 14).

Likewise, in *Sjunde AP-FONDEN v. The Goldman Sachs Group*, 2023 WL 4865617 (S.D.N.Y. July 31, 2023), Judge Parker granted plaintiffs' request to amend their complaint with evidence uncovered in discovery to expand the Class Period with additional stock drops. Defendants unsuccessfully argued that the amendment was futile because it was "based on factual allegations that conflict with [plaintiffs'] existing allegations and class certification briefing based on those allegations." *Id*. at 3. Without imposing a stay, Judge Parker invited the parties "to file supplemental briefing on the class certification motion." *Id*. at 8.

Defendants parade several inapposite cases, most of which are unpublished opinions from courts outside the Second Circuit. In *Vignola v. Fat Brands, Inc.*, 2019 WL 13038337 (C.D. Cal. Dec. 3, 2019), *no claims* had been sustained against *any* defendants. Even under that procedural posture, where no merits of *any* complaints had been tested, the court recognized that "the parties point to cases that come out differently as to whether the stay applies to class certification." *Id*. at 2. Likewise, in *Spears v. Metropolitan Life Insurance*, 2007 WL 1468697 (N.D. Ind. May 17, 2007), no claims were tested and the court imposed a stay "to minimize the incentives for plaintiffs to file *frivolous* securities class actions." *Id*. at 2. Similarly, in *Winn v. Symons Int'l Group, Inc.*, 2001 WL 278113 (S.D. Ind. 2001), the court had yet to determine the viability of *any* claims. *Id*. at 2. In *In re Valuejet, Inc.*, 984 F.Supp.1472 (N.D. Ga. 1997), the court was in the process of evaluating the merits of plaintiffs' claims for the first time.

Defendants' other cases are even further afield. *In re Smith Barney Transfer Agent Litig.*, 2012 WL 1438241 (S.D.N.Y. 2012 Apr. 25, 2012) addressed an anomalous circumstance where, several months into discovery, the parties learned that the sole lead plaintiff lacked standing to litigate the class action because it did not purchase any of the funds at issue. *Id*. at *1. In *Sedona Corp. v. Ladenburg Thalmann, et al.*, 2005 WL 2647945 (S.D.N.Y. 2005), there was effectively no discovery and the court was concerned with ensuring that the purpose of the PSLRA would be met by precluding plaintiffs from repleading their claims with the benefit of discovery. *Id*. at *4. In *Moab Partners, L.P. v. Macquarie Infrastructure Corp.*, 2025 WL 2080507 (S.D.N.Y. July 24, 2025), no discovery whatsoever had occurred.

Defendants' cited case, *Turquoise Hill*, 2024 WL 791545, helps *Plaintiffs*. While permitting plaintiffs to file an amended complaint with information gleaned from discovery, Judge

Liman expressly observed that "although an objective of the federal securities laws . . . is to 'filter out strike suits' . . . the statute is not intended to achieve that objective 'at all costs.'" *Id*. at *6. "It is at least equally objectives of the securities laws to 'insure honest securities markets and thereby promote investor confidence' . . . and to protect investors against those who would defraud them." *Id*. Judge Liman underscored that ***the PSLRA's discovery stay provision to limit "abusive discovery to prevent fishing expedition lawsuits" "discharged that function" where "discovery was delayed for several months until Plaintiffs' [Second Amended Complaint] was tested and was found to state a claim for relief***." *Id*. (emphasis added). Here, as in *Turquoise Hill*, the PSLRA "discharged [its] function" when it stayed discovery until at least some of Plaintiffs' claims were sustained.

In sum, the PSLRA stay does not apply to stay proceedings where, as here, the Court already held that Plaintiffs plead viable claims, fact discovery has concluded, and Defendants negotiated a Scheduling Order that expressly contemplated dates for Plaintiffs' proposed amendment without the improper need for a stay. Moreover, the proposed amendments will not impact the Court's decision whether to certify the proposed class since the outcome-determinative issues have already been briefed. In any event, as in *The Goldman Sachs Group*, 2023 WL 4865617, the Court may invite Defendants to supplement their class certification briefing without unduly prejudicing the class.

Accordingly, Defendants' request for a stay should be denied. Under the Scheduling Order, affirmative expert reports are due February 9, 2026; rebuttal expert reports are due April 15, 2026; reply expert reports are due May 27, 2026; and expert depositions must be completed by June 26, 2026. Expert discovery should proceed unabated. Plaintiffs respectfully request a conference before the Court to address this very significant issue.

                                                                     Respectfully submitted,

                                                                     */s/ Emma Gilmore*
                                                                     Emma Gilmore

CC: All Counsel of Record