# EXHIBIT 5

## Page 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
Case No. 1:21-cv-04606-ERK-MMH
----------------------------------X
SUBHASH PATEL, Individually and
On Behalf of All Others Similarly
Situated,

    Plaintiff,

  vs.

KONINKLIJKE PHILIPS N.V. and
FRANS VAN HOUTEN,

    Defendants.
----------------------------------X

VIDEOTAPED DEPOSITION OF

████████████

New York, New York
September 19, 2025
9:41 a.m.

Reported by:
Debra Stevens, RPR/CRR
HUDSON COURT REPORTING & VIDEO   (212) 273-9911

## Page 2

September 19, 2025
9:41 a.m.

Videotaped Deposition of
████████████, the witness herein, held at the offices of Pomerantz LLP, 600 Third Avenue, New York, New York, pursuant to Notice, before Debra Stevens, Registered Professional and Certified Realtime Reporter and Notary Public of the State of New York.

## Page 3

A P P E A R A N C E S:
POMERANTZ LLP
Attorneys for Plaintiffs and the Proposed Class
    600 Third Avenue
    New York, New York 10016
  BY:   EMMA GILMORE, ESQ.
    egilmore@pomlaw.com
    VILLI SHTEYN, ESQ.
    vshteyn@pomlaw.com
    JESSICA N. DELL (Via Zoom)
    jndell@pomlaw.com

COZEN O'CONNOR
Attorneys for the Witness
    One Liberty Place
    1650 Market Street
    Suite 2800
    Philadelphia, Pennsylvania 19103
  BY:   CALLI PADILLA, ESQ.
    cpadilla@cozen.com

(Continued)

## Page 4

A P P E A R A N C E S:  (Continued)

COZEN O'CONNOR (Continued)
Attorneys for the Witness
    2001 M Street NW
    Suite 500
    Washington, D.C. 20036
  BY:   BARRY BOSS, ESQ.
    bboss@cozen.com

SULLIVAN & CROMWELL LLP
Attorneys for Defendants Royal Philips and Frans van Houten
    125 Broad Street
    New York, New York 10004-2498
  BY:   ALEXANDRA BODO, ESQ.
    boboa@sullcrom.com
    SIENNA LIU, ESQ.
    lius@sullcrom.com

Also Present:
    NICO STANZIOLA, Videographer

Pages 1 to 4

**New York**
**212-273-9911**

**Hudson Court Reporting & Video**
**1-800-310-1769**

**New Jersey**
**732-906-2078**

compliant with QMS regulations?

MS. PADILLA: Objection.

MS. BODO: Objection.

A.   It is an external audit, not an internal audit, so the FDA comes in. It can either be announced or unannounced. The FDA comes in, they provide you with a document -- I can't tell you the numbers on the document -- provide you with a document and say they are coming in to audit the quality system of XYZ facility.

And then they -- we provide them with a room, we provide them with the documentation that they request over time. And then at the closing of the audit, they provide a written document called a 483. They do an out-brief discussion and then they leave.

Q.   And the 483 sets forth the QMS deficiencies that the inspector finds. Correct?

A.   Inspectors find. There is multiple inspectors usually that come. And yes.

Q.   And those are again to be taken seriously; correct?

A.   Yes.

Q.   By any company, particularly companies that deal with medical devices. Right?

A.   Yes.

Q.   Okay. And in your role as chief quality and regulatory officer at Philips, were you required to familiarize yourself with the Form 483's that the FDA issues on Philips?

A.   Familiarize, meaning read and understand and comprehend?

Q.   Yes.

A.   Yes, I read the 483's.

Q.   And how did the 483's get to you?

A.   My -- whoever the individual was within the business unit that was accountable for quality and regulatory, they would forward it to me, usually in email.

Q.   And for the Philips Respironics Murrysville, who was that person?

A.   That would have been ████████

A.   Yes.

Q.   In your -- are you familiar with FDA warning letters?

A.   Yes, I am familiar with those.

Q.   Can you describe to the jury what they are?

A.   An FDA warning letter is a disciplinary action set by the FDA -- it is not a disciplinary action. It's a formal document that states "we are warning you" and stating that if you are not within compliance in a certain amount of period, further action will be taken.

Q.   So warning letters are also a serious matter; correct?

A.   Yes.

Q.   In your role as chief quality and regulatory officer at Philips, were you required to familiarize yourself with FDA warning letters that were sent to Philips?

A.   Yes.

Q.   And how did that come about? Through ████████ for example? Through

the head of quality for the business units?

A.   That would be -- yes.

Q.   Did you receive any training when you started at Philips?

A.   Yes, I received training.

Q.   And do you recall who trained you?

A.   Most of my training was online, and it was compliance training.

Q.   Okay.

A.   As required.

Q.   And how long was the training for, if you recall?

A.   I don't recall.

Q.   Prior to joining Philips, have you held the positions of chief quality and regulatory and compliance officer at any other company?

A.   No.

Q.   When you joined Philips as chief global quality and regulatory compliance officer, did you consider yourself an expert in quality and regulatory compliance?

MS. PADILLA: Objection.

**New York**
212-273-9911

Hudson Court Reporting & Video
1-800-310-1769

**New Jersey**
732-906-2078

A.    No.

Q.    But you thought you had enough background and experience to be able to serve in that role.  Correct?

A.    Yes.

Q.    Were you at any time part of the executive committee at Philips while you were employed there?

A.    No.

Q.



Q.    And when you say -- I think you

said "



Q.    Were you at any time part of the supervisory board at Philips?

A.    No.

Q.

Q.    When -- you keep emphasizing the word "

MS. BODO:  Objection.

MS. PADILLA:  Objection.

A.

**New York**
**212-273-9911**

**Hudson Court Reporting & Video**
**1-800-310-1769**

**New Jersey**
**732-906-2078**

Page 233



A.    I have no idea.

Q.    You don't know one way or another?

A.    I don't know one way or another. I would imagine he probably just wanted to keep it within his walls and get it cleaned up. But I don't have purview --

Q.    You are speculating, correct?

A.    Yes.

Q.    Who was then responsible for ensuring that Philips Respironics Murrysville, was in compliance with FDA regulations?

A.    Everyone in the business was responsible for ensuring that we were in compliance with FDA regulations.

Q.    I am speaking specifically with respect to Philips Murrysville.

A.    Every one in that plant was responsible.

Q.    And the buck stopped there?

A.    The -- yes.  So, that business,

Page 234

the buck stopped with ███████, and that was his responsibility and accountability to ensure that there was in compliance, along in the partnership with monitoring and controls of the key quality system activities.

███████ would have been responsible. ███████ would have been responsible for his product line, and the functional leaders across.

Q.    Are you aware that ███████ ███████

A.    That would make sense that he would say that.

Q.    Do you agree with that?

A.    He is one, and so is ███████.

Q.    So they were both responsible?

A.    Yes.

Q.    But you were not?

A.    I am ultimately responsible for the overall, for Philips, yes.  But for what goes on between the four walls in Murrysville, ███████ and ███████ would

Page 235

be responsible.

Q.    And we have seen that ███████ correct?

MS. PADILLA:  Objection.

MS. BODO:  Objection.

Q.    ███████

Q.    And are you aware that ███████

MS. PADILLA:  Objection.

MS. BODO:  Objection.

Q.    Or do you not know that?

A.    I don't know if ███████ I am sure that -- yeah. I don't know if ███████



Page 236



Correct?

MS. PADILLA:  Objection.

MS. BODO:  Objection.

Q.    ███████

A.    Yes.

Q.    We mentioned earlier that ███████

Pages 233 to 236

**New York**
212-273-9911

**Hudson Court Reporting & Video**
1-800-310-1769

**New Jersey**
732-906-2078

Page 237

████ that I recall.

Q. Sorry?

A. ████

Q. Do you recall -- you said ████ Can you be more specific about what the ████ was?

A. I really can't. All I can remember is ████

Page 238

MS. PADILLA: Objection.

Q. And do you recall ████

A. No.

Q. ████

Q. You said ████

Page 239

A. Yes.

Q. And why would you do that?

A. Because I reported to him, and ████

Q. And did you prepare anything in advance of this ████

Page 240

Q. And do you recall ████

A. No. And of course here is the --

**New York**
212-273-9911

**Hudson Court Reporting & Video**
1-800-310-1769

**New Jersey**
732-906-2078