# EXHIBIT 7



Page 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------X

SUBHASH PATEL, Individually and
On Behalf of All Others Similarly
Situated,

       Plaintiff,

  vs.

KONINKLIJKE PHILIPS N.V. AND
FRANS VAN HOUTEN,

    Defendants.

Case No. 1:21-cv-04606-ERK-MMH

----------------------------------X

C O N F I D E N T I A L

VIDEOTAPED DEPOSITION OF ▮▮▮▮▮
Thursday, September 11, 2025
Conducted Remotely

REPORTED BY:
Christina Diaz, RDR CRC CRR RMR CSR-NY/NJ CLR
HUDSON COURT REPORTING & VIDEO   (212) 273-9911

Page 2

September 11, 2025
9:14 A.M. E.S.T.

Videotaped deposition of ▮▮▮▮▮ ▮▮▮▮ conducted remotely, before Christina Diaz, a Registered Diplomate Reporter, Certified Realtime Captioner, Certified Realtime and Registered Merit Reporter and Notary Public within and for the State of New York.

Page 3

A P P E A R A N C E S

POMERANTZ LLP
Attorneys for Plaintiffs and
The Proposed Class
  600 Third Avenue
  New York, NY 10016
  212.661.1100
  egilmore@pomlaw.com
  vshteyn@pomlaw.com
BY:  VILLI SHTEYN, ESQ.
    EMMA GILMORE, ESQ.
    JESSICA N. DELL

SULLIVAN & CROMWELL LLP
Attorneys for Defendants
Royal Philips and Frans van Houten
  125 Broad Street
  New York, NY 10004-2498
  212.558.4000
  browneja@sullcrom.com
  barkerz@sullcrom.com
BY:   JAMES J. BROWNE, ESQ.
    ZACHARY R. BARKER, ESQ.

Page 4

A P P E A R A N C E S (Cont'd.)

WELSH & RECKER, P.C.
Attorneys for Witness ▮▮▮▮▮
  306 Walnut Street
  Philadelphia, PA 19106
  215.972.6430
  cmrecker@welshrecker.com
  abcarver@welshrecker.com
BY:  CATHERINE M. RECKER, ESQ.
    AMY CARVER, ESQ.

ALSO PRESENT:
  PASHA KORNEYCHUK, Videographer

Pages 1 to 4

**New York**
**212-273-9911**

**Hudson Court Reporting & Video**
**1-800-310-1769**

**New Jersey**
**732-906-2078**

█████ - Confidential

A. Yes.

Q. Do you understand that you are testifying under oath today?

A. Yes, I do.

Q. Is there any reason that you can't provide accurate and complete testimony today?

A. No, sir.

Q. Do you have any kind of notes or documents in front of you?

A. No, I do not.

Q. Are you aware that Philips is a defendant in this matter?

A. Can you be -- when you say "Philips," can you be specific?

Q. Royal Philips.

A. Yes. I'm aware.

Q. Do you understand there are other defendants beyond Philips in this case?

A. Other defendants?

Q. Are you aware of any other defendants in this case?

A. Not that I am aware of.

Q. Okay. So you're not aware that

█████ - Confidential

former CEO Frans van Houten is a defendant?

A. Yes.

Q. What did you do to prepare for today's deposition?

A. Met with my attorneys.

Q. What kind of documents related to the case did you review, if any?

A. The -- I don't know. The binder.

Q. Which binder are you referring to?

A. Zachary or James, can you help with that. I am not sure how to answer the question.

What binder?

Q. So what I am asking is, what was in the binder? What kinds of documents?

A. E-mails from myself related to the case and others.

Q. Was that from your counsel? They sent that to you?

A. Yes.

Q. These were internal e-mails that you sent while you were at Respironics?

A. Yes, sir. Along with e-mails

█████ - Confidential

from other individuals.

Q. And other than e-mails, what kinds of documents were in there?

A. Documents like project plans -- actually, that's all I recall are e-mails and project plans.

Q. When you say "project plans," are you referring to any specific projects?

A. Project Uno.

Q. What kinds of -- can you just give a little more detail on what you mean by project plans?

A. Well, it was draft timelines as Uno was getting started, trying to put together draft timelines, content. Things like that for Project Uno.

Q. You said that you met with your attorneys.

Was that in person, or was that remotely?

A. In person.

Q. When were those meetings?

A. This week.

Q. How many days of meetings?

█████ - Confidential

A. Just one.

Q. And when was that?

A. Monday.

Q. Approximately how much time was the meeting?

A. Four hours.

Q. Aside from meeting with your attorneys, did you do anything independently to prepare for the deposition?

A. No, sir.

Q. So you mentioned that you have been deposed before.

Do you know how many times?

A. I do not recall.

Q. Is it more than five times?

A. It would probably be around five times. Five, six times.

Q. And in what cases?

A. Well, related to the recall. The foam degradation. And then two times with another company.

Q. So related to the foam degradation. That's just one deposition or

New York
212-273-9911

Hudson Court Reporting & Video
1-800-310-1769

New Jersey
732-906-2078

Page 21

████ - Confidential

is that multiple?

A.    That would be multiple.

Q.    How many?

A.    Three.  Some of them -- some of them weren't depositions, so I don't know what you call those.

Q.    How many of them were depositions?

A.    Maybe one or two.

Q.    And you are saying that some of them were not depositions.

Can you explain what they were?

A.    I don't know what the proper terminology is.

Q.    What took place?  You were asked questions by an attorney?

A.    An interview.

Q.    Interview by who?

THE WITNESS:  Am I allowed to answer that?

MS. RECKER:  Yes.

A.    By the Department of Justice and the NCC.

Page 22

████ - Confidential

BY MR. SHTEYN:

Q.    When did that take place?

A.    Earlier this year.  March, April time frame, I believe.

Q.    And that was the Department of Justice or the SEC?

A.    Which one was that?  That was the Department of Justice, I believe.

Q.    So earlier this year was the Department of Justice.

And what about the SEC, when was that?

A.    I believe that was actually this year as well, in January-ish, maybe the end of last year.  I don't recall exactly.

Q.    What kinds of questions were you asked by the DOJ during your interview?

A.    Questions about the recall; questions about the investigation, complaints, Project Uno, things of that nature.

Q.    Did they ask you about any specific individuals regarding their involvement with the recall?

Page 23

████ - Confidential

A.    Not that I recall, specifically.

Q.    Did they ask you anything about Frans van Houten?

A.    I don't recall.

Q.    Did they ask you anything about Roy Jakobs?

A.    I believe Roy -- I believe Roy came up, but I don't recall specifically.

Q.    Do you recall anything about the question they asked you about Roy Jakobs?

A.    I don't recall the specifics.

Q.    Did you produce any documents to the DOJ?

A.    I did not personally, no.

Q.    So when you say you didn't personally, are you referring to somebody else producing documents that you are aware of?

A.    I don't know what was provided from the attorneys.

Q.    When you say "attorneys," you mean your attorneys?

A.    My attorneys or company attorneys.  I don't know.

Page 24

████ - Confidential

Q.    Were you asked to look for any documents by the DOJ?

A.    I was not.

Q.    So then turning to the SEC interview, do you recall the questions that you were asked by the SEC?

A.    The same types of questions.

Q.    So were you asked about Frans van Houten?

A.    I don't recall.

Q.    What about Roy Jakobs?

A.    I don't recall that one either.

Q.    Did you produce any documents to the SEC?

A.    No.

Q.    Were you asked to look for any documents by the SEC?

A.    No, sir.

Q.    And for -- turning back to the DOJ, was that just one interview or was that multiple?

A.    One interview.

Q.    What about for the SEC?

A.    Same.

**New York**
212-273-9911

**Hudson Court Reporting & Video**
1-800-310-1769

**New Jersey**
732-906-2078

Page 25

▮ - Confidential

Q. And so other than those two interviews with the -- one interview with the DOJ and one with the SEC -- did any other government entity interview relating to the foam recall?

A. No, sir.

Q. And you mentioned that there were a number of depositions -- initially, you said depositions, but then you recalled that some of them might have been interviews. Other than the DOJ interview and the SEC interview, what other -- scratch that. Let me rephrase.

You said that there was one or two depositions that you had. So do you recall if that was one or two depositions related to the foam recall?

A. I believe it was one. I am not positive, though.

Q. Is that the one from -- is that from January of this year?

A. No. I believe it would have been last year sometime.

Q. Was there a second deposition you

Page 26

▮ - Confidential

took related to the foam recall -- sorry -- deposition?

Was there a second time you were deposed related to the foam recall?

A. I think it was just that time.

Q. So other than those three -- the deposition and the interview with the DOJ and SEC, are there any other instances where you were deposed or interviewed about the foam issues?

A. No, not that I recall.

Q. You mentioned earlier that you had about five or six depositions total, approximately. Are any of the other depositions relating to your employment at Philips, Respironics?

A. No, sir.

Q. What were the other depositions about?

A. Products with other companies.

Q. What other companies?

A. Baxter Healthcare.

Q. Were you employed by Baxter Healthcare?

Page 27

▮ - Confidential

A. Yes, sir, I was.

Q. Was that before or after your time at Respironics?

A. Before.

Q. What were the depositions about? What products?

A.

Q. Were there any issues with the products that you were deposed about?

A. There were, but I don't recall what the issues were right now.

Q. Do you recall why you were deposed in those cases -- what your role was?

A. I was in quality leadership. I believe I was the signatory for the recall.

Q. And were there quality issues with the products?

Page 28

▮ - Confidential

MS. RECKER: Object to the form.

A. I am not sure what the specifics were for that deposition.

BY MR. SHTEYN:

Q. What year was that recall?

A. I do not recall.

Q. And then you said that -- I believe there are other depositions that you participated in. Was that related to Baxter as well or other companies?

A. Baxter.

Q. And have you ever been deposed for something other than Baxter or Philips?

A. I don't believe so.

Q. What is your educational background?

A. In terms of my degree or -- I have a bachelor of science in electrical engineering.

Q. And do you have any other degrees?

A. No, sir.

Q. And what was your time period of employment for Respironics?

**New York**
**212-273-9911**

**Hudson Court Reporting & Video**
**1-800-310-1769**

**New Jersey**
**732-906-2078**

 - Confidential

A.    It was 2017 until 2022, I believe.

Q.    And do you recall the month that you started in 2017?

A.    I think it was August, but I am not positive.

Q.    And what titles did you have during your time at Respironics?

A.    They just had, like, leaders.  It was the same position the whole time.  It was head of quality, regulatory for Respironics, SRC.

Q.    And what did your job entail?

A.    Maintaining the quality system, ensuring that we were following -- that Respironics was following procedures, you know, monitoring submissions, monitoring any field complaints, things like that.  My team had responsibility for that.

Q.    And who did you report to during your time at Respironics?

A.    

 - Confidential

 - Confidential

Q.    And when did you depart

 - Confidential

Respironics?

A.    In the middle of 2022.

Q.    Was that July 2022?

A.    It was right around there, June, July timeframe.

Q.    Why did you leave?

A.    

Q.    Was the departure voluntary?

A.    Yes, sir.

Q.    And where did you leave to?  What was the role you took on after Respironics?

A.    Well, I went to work for Regulatory Compliance Associates.  It's a consulting company.  I started out as a consultant, and after the first year, I then took a leadership role with the

**New York**
**212-273-9911**

**Hudson Court Reporting & Video**
**1-800-310-1769**

**New Jersey**
**732-906-2078**

Page 33

- Confidential

company.

Q.   And then we already discussed that prior to Respironics, you worked for a company called "Baxter" and that there was a recall at Baxter.

Is that your only experience with a recall prior to working at Respironics?

A.   No, sir.

Q.   So what other recalls do you have experience with?

A.   I have had recalls at Baxter outside of just that one, and then I have also worked for a company called Alere based in California, and I dealt with recalls there as well.

Q.   Were those recalls of medical devices?

A.   Yes, they would be.

Q.   Do you recall what some of these recalls were?

A.

Q.   Other than the one at Alere and

Page 34

- Confidential

the one we mentioned at Baxter, any others that you recall?

A.   There were.  I just don't recall the products.

Q.   So you were at Respironics when there was a recall of certain CPAP, BiPAP, and ventilator devices in June of 2021, correct?

A.   Yes, with Respironics.

Q.   And that recall was of devices that used a polyester-based polyurethane foam, correct?

A.   It was.

Q.   This foam was used for sound abatement in the devices, correct?

A.   Yes, sir.

Q.   And there were safety issues that were associated with that foam?

A.   There were alleged safety issues, yes.

Q.   And Philips received some reports of foam degradation?

A.   Respironics, yes, sir.

Q.   The foam also off-gassed certain

Page 35

- Confidential

chemicals, correct?

A.   During the investigation, we found some VOCs, yes.

Q.   And VOC stands for "volatile organic compounds," right?

A.   Yes, sir.

Q.

Page 36

- Confidential

Pages 33 to 36

**New York**
**212-273-9911**

**Hudson Court Reporting & Video**
**1-800-310-1769**

**New Jersey**
**732-906-2078**

Page 145



■ - Confidential

Q.    Do you have any reason to believe that the FDA was lying here?

A.    I didn't say they were lying, but they may have missed information.

Q.    And do you have any reason to believe that they missed information?

A.    That, I don't know.

Q.    So their finding here could be totally accurate.  You just don't know?

A.    I don't know.

Q.    Let's go to page 23 of this form.

Page 146



■ - Confidential

A.    I see that.

Q.    Are you part of the intended management with executive responsibility here?

A.    I would be.

Q.    Who else would be?

A.    ■ leadership team.

Q.    Anybody else that you can name from the leadership team?

A.    No, not off the top of my head.

Q.    Who was the leadership team?  Who would that consist of?

A.    Well, that would be SRC.  So myself, ■ leadership team would be the executive leadership team for SRC.

Q.    Is that all the names that you

Page 147

■ - Confidential

can recall, or is there anybody else?

A.

MS. RECKER:  Could you make the

Page 148

■ - Confidential

text just a little bigger?

MR. SHTEYN:  Yes.

MS. RECKER:  Thank you.  That's great.

MR. SHTEYN:  Is that better?

MS. RECKER:  Yes.  Thank you.

THE WITNESS:  Yes.

BY MR. SHTEYN:

Q.    Let me know if you need me to scroll up or down.

A.    No.  Can you restate the question?

Q.

Q.    Yes.

A.    (Witness reviewing document).  I do see that.

Pages 145 to 148

New York
212-273-9911

Hudson Court Reporting & Video
1-800-310-1769

New Jersey
732-906-2078

Page 213

- Confidential

Q.   Do you recall other instances where you were included on such e-mails?

A.   I do not.

Q.   Do you know why he included you here?

A.   I do not.

MR. SHTEYN:  Let's go to Exhibit 30.  This is pre-marked Exhibit 30. And I am sharing it on the screen right now.

(     Exhibit 30, e-mail string beginning with e-mail dated 1/12/2020 bearing Production Nos. Philips_Securities 109530 through 109531, was marked for identification)

BY MR. SHTEYN:

Q.



Page 214

- Confidential

Page 215

- Confidential



Page 216

- Confidential

Q.   And do you know what she means by that?

MS. RECKER:  Object to the form.

A.   I do not, no.

BY MR. SHTEYN:

Q.

Pages 213 to 216

**New York**
**212-273-9911**

**Hudson Court Reporting & Video**
**1-800-310-1769**

**New Jersey**
**732-906-2078**



Page 217

- Confidential

Page 218

- Confidential

Page 219

- Confidential

BY MR. SHTEYN:

Q.    But it's possible he was, you just don't know?

MS. RECKER:  Objection.

A.    I don't know.

BY MR. SHTEYN:

Q.

MS. RECKER:  Objection.

A.    I do not know.

BY MR. SHTEYN:

Q.    But it's possible she did, you are just not aware.  You might not have been on the e-mail chain?

MS. RECKER:  Objection.

A.    I don't know.

BY MR. SHTEYN:

Q.

Page 220

- Confidential

A.    Yes, sir.

MR. SHTEYN:  I am going to go to Exhibit 31.

(    Exhibit 31, e-mail dated 12/1/2020 bearing Production Nos. PHILIPS_SOCLEAN 134030 through 134031 with attachment, 22 pages, was marked for identification)

BY MR. SHTEYN:

Q.

Pages 217 to 220

**New York**
**212-273-9911**

**Hudson Court Reporting & Video**
**1-800-310-1769**

**New Jersey**
**732-906-2078**

Page 269

████ - Confidential

misspoken.

A.   Yes.  May 7th, yes.

Q.   ████████████████

████████████████████ A.   Where does it -- oh, there.

MS. RECKER:  Can you show the whole e-mail?

A.   Can we start the bottom?

BY MR. SHTEYN:

Q.   No problem.  Let me know when to move up.

A.   Go ahead.  That's a meeting.

(Witness reviewing document).

Okay.  Can you go up some more?

(Witness reviewing document).

Okay.  Can you go up a little bit more?

(Witness reviewing document).

Got it.  Okay.

Q.   So we are back to this top e-mail, but if you need another second to

Page 270

████ - Confidential

review this one as well, let me know.

A.   (Witness reviewing document).

Q.   Let me know when you are ready.

A.   Yes.

(Witness reviewing document).

Okay.

Q.   ████████████████████

Page 271

████ - Confidential

Page 272

████ - Confidential

**New York**
**212-273-9911**

**Hudson Court Reporting & Video**
**1-800-310-1769**

**New Jersey**
**732-906-2078**

 - Confidential



- Confidential



- Confidential

Q.	But despite that, the Form 483 found that there were deficiencies with your compliance?

A.	That was the FDA's allegations, correct.

Q.	Allegations or findings?

A.	Their findings.  Not that we agreed with their findings.

Q.

Q.	Did you know that KPNV made statements about compliance with FDA regulations in their SEC filings?

A.	I was not aware.

Q.	And in those statements, they talked about global compliance, not just at the parent or any individual company but globally.  Are you aware of that?

A.	I am not.

Q.

- Confidential

Q.	We mentioned earlier there was that ISO -- I don't remember the number, but if you recall what I am talking about, the ISO 18562, I believe it was, test?

A.	Yes.

Q.	So ISO stands for international organization for standardization, right?

A.	I believe so.

Q.	And if you are doing ISO tests, you are making sure you are compliant with the ISO standards, right?

A.	That is correct.

Q.	And would you also be responsible for ensuring compliance with ISO requirements?

A.	Any of our product requirements would have fallen on to the sleep and respiratory care personnel.

Q.

**New York**
**212-273-9911**

**Hudson Court Reporting & Video**
**1-800-310-1769**

**New Jersey**
**732-906-2078**

Page 277

 - Confidential

Q.    And you mean the ISO standards?
A.    It could be the ISO standards. It could be other requirements related to the QMS.

Q.

Q.    Are you aware they made statements about being compliant with ISO requirements also in their SEC filings?
A.    No.  I am not aware.
Q.    And did they consult with you about that -- about meeting those

Page 278

- Confidential
standards?
A.    Not that I recall.
MR. SHTEYN:  I am going to go to Exhibit 37.
(    Exhibit 37, Connected Care Strategy Execution Dialogue dated July 1, 2020, 57 pages, was marked for identification)
BY MR. SHTEYN:
Q.    This is pre-marked as Exhibit 37. It is a presentation that's titled Connected Care - Strategy Execution Dialogue and it's dated July 1, 2020.  I am going to zoom in a little.
Have you ever seen this document? And obviously, we will go through the slides, but I just wanted to ask you at first in case you recognize it?
A.    I don't recall.
Q.    I will ask you again once we go through it.  Do you know what a strategy execution dialogue is?
A.    I do not.
Q.    So I am going to go to page 37.

Page 279

- Confidential
So I am on page 37.  I am going to zoom in a little bit more.  Let me know if this is readable?
A.    Yes, sir.
Q.    Do you see that it's titled -- the slide is titled SRC: Portfolio Review Commentary?
A.    I do.
Q.    Do you see that under Change, it says, "Project UNO (Sleep Therapy Quality)"?
A.    I do.
Q.



A.    I do not. I'm not aware of this document.  I don't recall.
Q.    I am going to go to page 49 or slide 49 of this presentation.  Do you see that it's titled SRC Strategy Execution Dashboard?

Page 280

- Confidential
A.    Yes, sir.
Q.    Is this big enough to read now?
A.    Yes, sir.
Q.



Pages 277 to 280

**New York**
**212-273-9911**

**Hudson Court Reporting & Video**
**1-800-310-1769**

**New Jersey**
**732-906-2078**